1   BRIAN K. WALTERS, ESQ.
    Nevada Bar No. 9711
2   GORDON REES SCULLY MANSUKHANI, LLP
    300 S. 4th Street, Suite 1550
3   Las Vegas, Nevada  89101
    Telephone:  (702) 577-9300
4   Facsimile:  (877) 306-0043
    E-Mail:  bwalters@grsm.com

5

6   *Attorneys for Defendants*
    *CERTAIN UNDERWRITERS AT LLOYD'S,*
    *LONDON, AS SUBSCRIBED TO POLICY*
7   *NUMBER MPL4147217.19 and HISCOX, INC.*

8               UNITED STATES DISTRICT COURT

9                    DISTRICT OF NEVADA

10  AMERICAN PROTECTION GROUP, INC.          Case No.:

11              Plaintiff,

12      vs.                                  **NOTICE OF REMOVAL**

13  CERTAIN UNDERWRITERS AT LLOYD'S,
    LONDON AS SUBSCRIBED TO POLICY
14  NUMBER MPL4147217.19; SYNDICATE NO.
    3624; HISCOX, INC. dba HISCOX INSURANCE
15  AGENCY; DOE INDIVIDUALS I through X,
    inclusive; and ROE CORPORATIONS I through X,
16  inclusive,

17              Defendants.

18

19          PLEASE TAKE NOTICE that Defendants Certain Underwriters at Lloyd's, London as

20  Subscribed to Policy Number MPL4147217.19 ("Underwriters") and Hiscox, Inc. ("Hiscox")

21  (collectively the "Insurers") hereby remove this action from the District Court of Clark County,

22  Nevada to the United States District Court for the District of Nevada, pursuant to 28 U.S.C. §§

23  1332, 1441 and 1446. In support hereof, Hiscox further states as follows:[1]

24      **I.      REMOVAL JURISDICTION**

25          1.      This action is removable to this Court pursuant to 28 U.S.C. § 1332, because

26  complete diversity exists between the parties and the amount in controversy exceeds $75,000.

27          2.      Removal to this Court is proper pursuant to 28 U.S.C. §§ 1391 and 1446(a).

28  _____
    [1] Plaintiff has misnamed Syndicate 3624 as a separate entity from Certain Underwriters at Lloyd's, London
    as Subscribed to Policy Number MPL4147217.19.

*(Left margin, vertical text:)* Gordon Rees Scully Mansukhani, LLP / 300 S. 4th Street, Suite 1550 / Las Vegas, NV 89101

**Gordon Rees Scully Mansukhani, LLP**
**300 S. 4th Street, Suite 1550**
**Las Vegas, NV 89101**

## II.    RELEVANT PROCEDURAL BACKGROUND

3.    Plaintiff American Protection Group, Inc. ("Plaintiff") filed its Amended Complaint on February 14, 2022 in the District Court of Clark County, Nevada (See Plaintiff's Amended Complaint, attached hereto as Ex. A). Plaintiff alleges six separate causes of action against Underwriters:  (1) Breach of Contract; (2) Contractual Breach of the Implied Covenant of Good Faith and Fair Dealing; (3) Tortious Breach of the Implied Covenant of Good Faith and Fair Dealing; (4) Unfair Claims Practices; (5) Unjust Enrichment; and (6) Declaratory Judgment (Ex. A). Plaintiff alleges three separate causes of action against Hiscox: (1) Intentional Interference with Contractual Relations; (2) Unjust Enrichment; and (3) Declaratory Judgment (Ex. A).[2]

4.    The Insurers received formal service of Plaintiff's Amended Complaint on February 22, 2022 (See Notice of Service, attached hereto as Ex. B).

5.    Pursuant to 28 U.S.C. § 1446(a), a true and correct copy of "all process, pleadings, and orders" served on the Insurers is attached hereto as Ex. A and B.

## III.    TIMELINESS OF REMOVAL

6.    Pursuant to 28 U.S.C. § 1446(b), this Notice of Removal must be filed within thirty (30) days after the Insurers' receipt of the Amended Complaint (through service or otherwise). As set forth in ¶ 4 supra, the Insurers received formal service of the Amended Complaint on February 22, 2022.  Therefore, this Notice of Removal is timely.

## IV.    VENUE

7.    Removal is proper under 28 U.S.C. § 1441(a), because this Court sits in the District and Division "embracing the place where [this] action is pending" – the District Court of Clark County, Nevada (See Ex. A).

/ / /

/ / /

/ / /

---

[2] Plaintiff also lists fictitious defendants (Doe Individuals I through X, inclusive and Roe Corporations I through X, inclusive (Ex. A). As 28 U.S.C. § 1441(b)(1) provides that the citizenship of defendants sued under fictitious names shall be disregarded, the Insurers do not include information related to the fictitious defendants.

**V.      JURISDICTION**

8.      This Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1332(a), because there is complete diversity between the parties and the amount in controversy exceeds $75,000 (exclusive of costs and interest).

9.      There is complete diversity between Plaintiff and the Insurers, because: (a) Plaintiff is a Nevada corporation with its principal place of business in Las Vegas, Nevada; (b) Hiscox is a Delaware corporation with its principal place of business outside of Nevada; and Certain Underwriters at Lloyd's, London as Subscribed to Policy Number MPL4147217.19 is an unincorporated insurance marketplace whose sole member is Hiscox Dedicated Corporate Member, Ltd., a United Kingdom corporation whose principal place of business is located in the United Kingdom (See Ex. A at ¶ 1).

10.      The amount in controversy exceeds $75,000 (exclusive of costs and interests), as: (a) Plaintiff seeks reimbursement of defense costs in excess of $15,000; and (b) Plaintiff alleges multiple causes of action for extra-contractual liability and seeks compensatory and punitive damages (See Ex. A at pg. 14).

11.      Accordingly, this action is removable pursuant to 28 U.S.C. § 1441.

**VI.      NOTICE TO PLAINTIFF'S COUNSEL AND THE STATE COURT**

12.      Pursuant to 28 U.S.C. § 1446(d), the Insurers will provide Plaintiff's counsel with a copy of this Notice of Removal and file a copy hereof with the Clerk of the District Court of Clark County.

/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /

Gordon Rees Scully Mansukhani, LLP
300 S. 4th Street, Suite 1550
Las Vegas, NV 89101

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**VII.    CONCLUSION**

    13.    For the foregoing reasons, this action is properly removable to this Court, and the Insurers respectfully request that this Court assume full jurisdiction over this matter.


DATED this 18th day of March, 2022.

                                                    GORDON REES SCULLY
                                                    MANSUKHANI, LLP


                                                    */s/ Brian K. Walters*
                                                    Brian K. Walters, Esq.
                                                    Nevada Bar No. 9711
                                                    300 S.  4th Street, Suite 1550
                                                    Las Vegas, Nevada 89101

                                                    *Attorneys for Defendants*
                                                    *CERTAIN UNDERWRITERS AT LLOYD'S,*
                                                      *LONDON, AS SUBSCRIBED TO POLICY*
                                                    *NUMBER MPL4147217.19 and HISCOX,*
                                                      *INC.*

## CERTIFICATE OF SERVICE

I hereby certify under penalty of perjury that on the 18th day of March, 2022, the foregoing **NOTICE OF REMOVAL TO FEDERAL COURT** was mailed via U.S. Post Office, first class postage prepaid, upon the following:

John P. Aldrich, Esq.
Catherine Hernandez, Esq.
ALDRICH LAW FIRM, LTD.
7866 West Sahara Ave.
Las Vegas, NV 89117
*Attorneys for Plaintiff*

/s/ Gayle Angulo
An Employee of GORDON REES
SCULLY MANSUKHANI, LLP

**Gordon Rees Scully Mansukhani, LLP**
**300 S. 4th Street, Suite 1550**
**Las Vegas, NV 89101**

# **EXHIBIT A**

Electronically Filed
2/14/2022 8:46 AM
Steven D. Grierson
CLERK OF THE COURT

**ACOM**
John P. Aldrich, Esq.
Nevada Bar No. 6877
Catherine Hernandez, Esq.
Nevada Bar No. 8410
**ALDRICH LAW FIRM, LTD.**
7866 West Sahara Avenue
Las Vegas, NV 89117
Telephone: (702) 853-5490
Facsimile: (702) 227-1975
*Attorneys for Plaintiff*

## EIGHTH JUDICIAL DISTRICT COURT
## CLARK COUNTY, NEVADA

AMERICAN PROTECTION GROUP, INC., a
Nevada corporation,

             Plaintiff,

vs.

CERTAIN UNDERWRITERS AT LLOYD'S,
LONDON AS SUBSCRIBED TO POLICY
NUMBER MPL4147217.19; SYNDICATE NO.
3624; HISCOX, INC. dba HISCOX INSURANCE
AGENCY; DOE INDIVIDUALS I through X,
inclusive; and ROE CORPORATIONS I through
X, inclusive,

             Defendants.

CASE NO.: A-21-843561-C
DEPT NO.: 32

**<u>AMENDED COMPLAINT</u>**

      Plaintiff AMERICAN PROTECTION GROUP, INC., a Nevada corporation, by and through its attorneys, John P. Aldrich, Esq. and Catherine Hernandez, Esq., of the Aldrich Law Firm, Ltd., hereby complains and alleges against Defendants as follows:

## <u>GENERAL ALLEGATIONS</u>

      1.    Plaintiff AMERICAN PROTECTION GROUP, INC. ("Plaintiff" or "APG"), is a Nevada corporation and at all relevant times mentioned herein, was licensed to do business in Clark County, State of Nevada.

1

2.    Upon information and belief, Defendant CERTAIN UNDERWRITERS AT LLOYD'S, LONDON ("Certain Underwriters" or collectively with the other Defendants, "Defendants") was at all relevant times mentioned herein, an unincorporated association and/or limited partnership organized under the law of Great Britain for providing infrastructure for the international insurance market.  Upon information and belief, Certain Underwriters transacts business in Clark County, Nevada.

3.    Upon information and belief, Certain Underwriters itself does not insure any risk, but rather, it is comprised of individual underwriters known as "members" or "syndicates" that assume all or a portion of the risk underwritten.

4.    Upon information and belief, the members of Certain Underwriters are either individuals or corporations, with different or multiple residences or principal places of business.

5.    Upon information and belief, one syndicate at Certain Underwriters, Syndicate No. 3624, subscribed to the policy at issue in this case, Certificate/Policy No. MPL4147217.19. Certain Underwriters and Syndicate No. 3624 have given the following address for service of process:  Compliance Department, Hiscox Insurance Agency, 101 California Street, Suite 4350, San Francisco, California 94111.

6.    Upon information and belief, Certain Underwriters, known as Syndicate No. 3624 ("Lloyd's 3624") is a syndicate member of Underwriters.  Certain Underwriters and Syndicate No. 3624 are collectively referred to as "Lloyd's."

7.    Defendant HISCOX, INC. dba HISCOX INSURANCE AGENCY ("Hiscox" or collectively with Lloyd's, "Defendants") was at all relevant times mentioned herein, a foreign corporation, transacting business in Clark County, Nevada.

2

8.      The true names and capacities of Defendant DOE INDIVIDUALS I through X are unknown to Plaintiff, and Plaintiff therefore sues said Defendants by said fictitious names. Plaintiff is informed and believes, and thereupon alleges that each of the Defendants designated as DOE INDIVIDUALS are responsible in some manner for the events and happenings referred to and caused the damages to Plaintiff as alleged and Plaintiff will ask leave of this court to amend this complaint to insert the true names and capacities of DOE INDIVIDUALS I through X when they are ascertained by Plaintiff together with appropriate charges and allegations to join such Defendants in this action.

9.      The trues names and capacities of Defendants ROE CORPORATIONS I through X are unknown to Plaintiff, and Plaintiff therefore sues said Defendants by said fictitious names. Plaintiff is informed and believes, and thereupon alleges that each of the Defendants designated as ROE CORPORATIONS I through X are responsible in some manner for the events and happenings referred to and caused the damages to Plaintiff as alleged, and Plaintiff will ask leave of this court to amend this Complaint to insert the true names and capacities of ROE CORPORATIONS I through X when they are ascertained by Plaintiff together with appropriate charges and allegations to join such Defendants in this action.

## **FACTUAL ALLEGATIONS**

10.      Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 9 of this Complaint as though set forth fully herein at length.

11.      Plaintiff purchased a policy of insurance from Lloyd's, Policy No. MPL4147217.19 (the "Policy"). (*See* Insurance Policy, attached hereto as **Exhibit 1**.) Plaintiff was the named insured under the Policy.

3

12.    The Policy was effective at all times relevant to this litigation. The Policy was administered by Hiscox. (**Exhibit 1**.)

13.    On December 8, 2020, Brittany Powers filed an Amended Complaint in the Eighth Judicial District Court in Clark County, Nevada, entitled *Brittany Powers v. Harbor Island Apartments, et al.*, Case No. A-20-814555-C (the "Underlying Lawsuit"). In that Amended Complaint, Ms. Powers alleges that on September 5, 2019, she was "violently sexually assaulted without provocation by one Michael Skinner." (Amended Complaint, ¶ 21.)

14.    Shortly after the Underlying Lawsuit was filed, an attorney for Harbor Islands Apartments ("Harbor"), another defendant in the Underlying Lawsuit, contacted Plaintiff and demanded that Plaintiff defend and indemnify Harbor in the Underlying Lawsuit.

15.    Following receipt of notice of the Underlying Lawsuit from Harbor, on or about December 16, 2020, Plaintiff, through its representative, sought coverage under the Policy and tendered its defense and indemnity to Defendants.

16.    Defendants refused to accept Plaintiff's tender of defense and indemnity, and on or about January 26, 2021, Defendants Lloyd's and Hiscox denied coverage for the incident alleged in the Underlying Lawsuit. Plaintiff had denied liability in the Underlying Litigation and has proceeded to defend against the claims.

17.    The basis for Defendants' denial is the following: "The basis of this matter is that Plaintiff was sexually assaulted. Thus, we are constrained to conclude that there is no coverage available under the Professional Liability coverage part for this matter pursuant to this exclusion." (*See* Letter dated April 1, 2021 from David. J. Schonbrun to Joseph Melech, attached hereto as **Exhibit 2**.)

18.     Soon thereafter, Plaintiff sent correspondence to the State of California Department of Insurance, seeking assistance with obtaining coverage for the Underlying Lawsuit.

19.     On or about April 1, 2021, Hiscox sent Plaintiff its response to Plaintiff's inquiry with the California Department of Insurance.  In that letter, Defendants, through Hiscox, again reiterated their position that no coverage applied to the Underlying Lawsuit on the sole basis set forth above.  (**Exhibit 2.**)

20.     On or about May 24, 2021, the State of California Department of Insurance sent a letter advising Plaintiff it could not assist in resolving the dispute between Plaintiff and Defendants.  (*See* Letter dated May 24, 2021 from Craig Witt to Joseph Melech, attached hereto as **Exhibit 3**.)

21.     To date, Defendants have refused to defend and/or indemnify Plaintiff for the Underlying Litigation, while costs of defense of the Underlying Litigation continue to mount.

22.     The Policy provides coverage for the claim, including defense and/or indemnity, or at a minimum, when read as a whole, is subject to more than one reasonable interpretation due to the Policy's inherent ambiguity.  Additionally, one or more of the Policy's many exclusions violate public policy, and such exclusions are void as against public policy.

23.     Plaintiff and its Insured Persons have been left alone by their insurer to bear their own defense costs because Defendants have unreasonably and improperly denied Plaintiff's claim.

### FIRST CAUSE OF ACTION
#### (Breach of Contract Against Lloyd's)

24.     Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 23 of this Complaint as though set forth fully herein at length.

25.     The Policy is a valid and enforceable contract and was in full force and effect when Plaintiff tendered defense and indemnity for the Underlying Litigation to Lloyd's.

5

26.    For adequate consideration, including payment of premiums, Lloyd's agreed to abide by the terms of the Policy, including to provide insurance coverage purchased by Plaintiff.

27.    Plaintiff fully performed its obligations under the Policy.

28.    Lloyd's breached the Policy by wrongfully denying coverage for the Underlying Litigation, and by wrongfully failing to defend and indemnify Plaintiff for the Underlying Litigation.

29.    Lloyd's breached the Policy by refusing to act in good faith and intentionally left Plaintiff to defend itself and unilaterally respond to the Underlying Litigation.

30.    As a direct and proximate result of Lloyd's breach of contract, Plaintiff has sustained general damages, including but not limited to, the payment of legal fees and other costs to date, in excess of $15,000.00.

31.    It has been necessary for Plaintiff to retain the services of an attorney to prosecute this action and is entitled to reasonable attorneys' fees and costs of suit incurred herein.

**SECOND CAUSE OF ACTION**
**(Contractual Breach of the Implied Covenant of Good Faith and Fair Dealing**
**Against Lloyd's)**

32.    Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 31 of this Complaint as though set forth fully herein at length.

33.    As stated above, the Policy is a valid and enforceable contract.

34.    There is implied, in every contract in Nevada, a duty of good faith and fair dealing.

35.    Lloyd's owes Plaintiff a duty of good faith and fair dealing.

36.    Lloyd's breached that duty by performing in a manner that was unfaithful to the purpose of the Policy.

37.     Lloyd's breached its duty of good faith and fair dealing by failing to give at least as much consideration to the interests of Plaintiff as it gave its own interests.

38.     Lloyd's breached its duty of good faith and fair dealing by having an actual or implied awareness of the absence of a reasonable basis to deny Plaintiff's the benefits of the Policy.

39.     Lloyd's breached its duty of good faith and fair dealing by relying on its own interpretation of ambiguous terms in the Policy to deny coverage to Plaintiff.

40.     Lloyd's breached its duty of good faith and fair dealing by refusing to act in good faith and intentionally left Plaintiff to defend itself and unilaterally advance funds to respond to and defend the Underlying Litigation.

41.     As a result of Lloyd's performing in a manner that was unfaithful to the purpose of the Policy, Plaintiff's justified expectations were denied.

42.     The actions of Lloyd's as described herein, constitute a contractual breach of the covenant of good faith and fair dealing with Plaintiff, and as a direct and proximate result thereof, Plaintiff has been damaged, including but not limited to the payment of legal fees and other costs to date, in a sum in excess of $15,000.00.

43.     It has been necessary for Plaintiff to retain the services of an attorney to prosecute this action and is entitled to reasonable attorneys' fees and costs of suit incurred herein.

### THIRD CAUSE OF ACTION
**(Tortious Breach of the Implied Covenant of Good Faith and Fair Dealing Against Lloyd's)**

44.     Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 43 of this Complaint as though set forth fully herein at length.

45.     The Policy is a valid and enforceable contract.

46.     There is implied, in every contract in Nevada, a duty of good faith and fair dealing.

7

47.   Lloyd's owes Plaintiff a duty of good faith and fair dealing.

48.   A special element of reliance or fiduciary duty exists between Plaintiff and Lloyd's because Lloyd's was in a superior and entrusted position, namely that of insurer and insured.

49.   Plaintiff had a justifiable expectation to receive the benefit of insurance coverage consistent with the spirit of the Policy.

50.   Lloyd's tortiously breached its duty of good faith and fair dealing by failing to give at least as much consideration to the interests of Plaintiff as it gave its own interests.

51.   Lloyd's breached its duty of good faith and fair dealing by having an actual or implied awareness of the absence of a reasonable basis to deny Plaintiff's the benefits of the Policy.

52.   Lloyd's breached its duty of good faith and fair dealing by relying on its own interpretation of ambiguous terms in the Policy to deny coverage to Plaintiff.

53.   Lloyd's breached its duty of good faith and fair dealing by refusing to act in good faith and intentionally left Plaintiff to defend itself and unilaterally advance funds to respond to and defend the Underlying Litigation.

54.   As a direct and proximate result of Lloyd's actions, Plaintiff has suffered damages, including but not limited to payment of legal fees and other costs.

55.   At all times mentioned herein, Lloyd's further owed a duty to Plaintiff to ensure it did not impair Plaintiff's rights to receive benefits of the Policy.

56.   It is Defendant's duty to evaluate and pay the claim fairly, in good faith, and in a manner free from malice or oppression.

57.   Plaintiff reasonably expected that Lloyd's would promptly pay covered losses.

58.   Lloyd's unreasonably delayed and withheld legally entitled benefits under the Policy.

59.    Lloyd's had no reasonable basis for withholding legally entitled benefits under the Policy, and Lloyd's knew or recklessly disregarded the fact that there was no reasonable basis for withholding those legally entitled benefits.

60.    Lloyd's acted in bad faith and violated its implied covenant of good faith and fair dealing by failing and refusing to provide the legally entitled benefits due and owing to Plaintiff under the Policy.

61.    At all times relevant, Lloyd's had actual or implied awareness of the absence of a reasonable basis for withholding legally entitled benefits under the Policy.

62.    Lloyd's conduct was deliberate, calculated, and done with the knowledge that there was a probable harmful consequence to Plaintiff.

63.    Lloyd's has refused to defend and indemnify Plaintiff under the Policy for losses associated with this claim and/or the Underlying Litigation.

64.    At all times relevant, Lloyd's had reason to know that it was probable that Plaintiff would suffer unjust hardship if Lloyd's deprived Plaintiff of the benefits under the Policy.

65.    At all times relevant herein, Lloyd's was aware of its obligations to discharge its contractual responsibilities to Plaintiff, but consciously and deliberately acted for its own benefit and to the detriment of Plaintiff.

66.    Lloyd's knew or should have known to a measure of certainty that Plaintiff was legally entitled to benefits under the Policy.

67.    Lloyd's knew or should have known that it is required to promptly pay benefits that Plaintiff is legally entitled to.

68.    Lloyd's failure to exercise good faith and fair dealing, and conversely to act oppressively and in bad faith, has resulted in substantial delay in receipt of benefits to which

Plaintiff is entitled, and has and will result in substantial economic loss, including but not limited to well as attorneys' fees and costs.

69.    The aforesaid conduct of Lloyd's was conscious and deliberate, and in willful, wanton and reckless, in disregard to Plaintiff's interests, and in conscious disregard to the consequences to Plaintiff, to such extent as to constitute oppression, fraud and actual malice toward Plaintiff, thus entitling Plaintiff to an award for punitive damages.

70.    By reason of the premises and as a direct and proximate result thereof, Plaintiff has incurred expenses incidental thereto, all to their damage; Plaintiff is informed and believes, and thereon alleges, that such expenses will continue in the future.

71.    The actions of Lloyd's as described herein, constitute a tortious breach of the covenant of good faith and fair dealing with Plaintiff, and as a direct and proximate result thereof, Plaintiff has been damaged, including but not limited to payment of legal fees and other costs to date, in a sum in excess of $15,000.00.

72.    It has been necessary for Plaintiff to retain the services of an attorney to prosecute this action and are entitled to reasonable attorneys' fees and costs of suit incurred herein.

### FOURTH CAUSE OF ACTION
### (Violation of the Unfair Claims Practices Act Against All Defendants)

73.    Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 72 of this Complaint as though set forth fully herein at length.

74.    That Plaintiff and Lloyd's were bound by a contractual relationship pursuant to the Policy. Hiscox acted as the administrator of the Policy.

75.    Defendants breached the covenant of good faith and fair dealing by its violation of provisions of the Unfair Claims Practices Act (NRS § 686A.310) set out below; violations which were done with Defendants' actual and/or implied knowledge.

10

76.     Defendants' deliberate delay in paying benefits due to Plaintiff is in direct violation of both the Nevada Insurance Regulations and NRS 686A.310.

77.     Defendants failed to acknowledge and act reasonably prompt upon communications with respect to claims arising under insurance policies, as prohibited by NRS § 686A.310(1)(b).

78.     Defendants failed to adopt and implement reasonable standards for the prompt investigation and processing of claims arising under the insurance policy, as prohibited by NRS § 686A.310(1)(c).

79.     Defendants failed to effectuate a prompt, fair and equitable settlement of claims in which its liability had become reasonably clear, as prohibited by NRS § 686A.310(1)(e).

80.     Defendants failed to promptly provide to an insured a reasonable explanation of the basis in the Policy, with respect to the facts of the insureds' claim and the applicable law, for the denial of the claim or for an offer to settle or compromise the claim, in violation of NRS § 686A.310(1)(n).

81.     Defendants have refused to act in good faith by intentionally leaving Plaintiff to defend itself and unilaterally respond to the Underlying Litigation.

82.     Due to Defendants' conduct in violation of NUIPA, Defendants are liable to Plaintiff for damages it sustained as a result of the commission of the unfair practices, and as a direct and proximate result thereof, Plaintiff has been damaged, including but not limited to payment of legal fees and other costs, in a sum in excess of $15,000.00.

83.     It has been necessary for Plaintiff to retain the services of an attorney to prosecute this action and is entitled to reasonable attorneys' fees and costs of suit incurred herein.

/ / /

11

## FIFTH CAUSE OF ACTION
### (Intentional Interference with Contractual Relations – Against Hiscox)

84. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 83 of this Complaint as though set forth fully herein at length

85. As stated above, the Policy is a valid and enforceable contract.

86. Defendant Hiscox, as administrator of the Policy, had actual knowledge of the existence of the Policy.

87. As described herein, Defendant Hiscox committed intentional acts intended or designed to disrupt the contractual relationship between Lloyd's and Plaintiff.

88. There was an actual disruption of the contract.

89. Due to Defendant Hiscox's conduct, Defendant Hiscox is liable to Plaintiff for damages it sustained as a result of Defendant Hiscox's interference with the contract, and as a direct and proximate result thereof, Plaintiff has been damaged, including but not limited to payment of legal fees and other costs, in a sum in excess of $15,000.00.

90. It has been necessary for Plaintiff to retain the services of an attorney to prosecute this action and is entitled to reasonable attorneys' fees and costs of suit incurred herein.

## SIXTH CAUSE OF ACTION
### (Unjust Enrichment – in the Alternative, Against All Defendants)

91. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 90 of this Complaint as though set forth fully herein at length.

92. A benefit has been conferred upon Defendants due to Plaintiff's payment of premiums under the Policy.

12

93.    To the extent that Defendants attempts to void the Policy and retain the premiums paid by Plaintiff for the Policy, Defendants' acceptance and retention of the benefit conferred upon it would be inequitable.

94.    Plaintiff respectfully requests, in the alternative, that if this Court allows Defendants to avoid its obligations under the Policy, including by holding the entire Policy void, that the Court enter a judgment against Defendants in an amount to be proven at trial, including but not limited to premium payments made by Plaintiff, costs and fees incurred by Plaintiff in obtaining the Policy, plus pre-judgment interest through the date of judgment, and for such other and further relief as this Court deems just and proper.

## SEVENTH CAUSE OF ACTION
### (Declaratory Judgment)

95.    Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 94 of this Complaint as though set forth fully herein at length.

96.    The Policy obligated Lloyd's to defend and indemnify Plaintiff and its Insured Persons for the Underlying Litigation.

97.    Lloyd's refusal to fulfill their contractual obligation to defend or indemnify Plaintiff and its Insured Persons under the Policy creates an actual controversy between the parties.

98.    As an Insured under the Policy, Plaintiff and its Insured Persons have an actual interest in the outcome of this case and the Court's determination regarding Lloyd's defense and indemnity obligations under the Policy.

99.    Plaintiff and its Insured Persons are entitled to a declaratory judgment setting forth the respective rights and obligations of the parties under the Policy.

100.    Plaintiff respectfully requests:

13

a.  A declaration that, under the Policy, Lloyd's is obligated to defend and indemnify Plaintiff for the Underlying Litigation;

b.  A declaration that, under the Policy, Lloyd's is obligated to defend and indemnify Plaintiff and its Insured Persons for Underlying Litigation;

c.  In the alternative, a declaration of the respective rights and obligations of the parties pursuant to the Policy;

d.  Reimbursement of Plaintiff's costs and fees to the extent permitted by law; and

e.  Such other and further relief as this Court deems just.

WHEREFORE, Plaintiff, expressly reserving the right to amend this Complaint prior to or at the time of trial of this action to insert those items of damage not yet fully ascertainable, prays for judgment against Defendant, as follows:

1.  General damages sustained by Plaintiff in an amount in excess of $15,000.00;

2.  Special damages to be determined at the time of trial;

3.  Consequential damages, including attorneys' fees;

4.  Expectation damages for denied policy benefits in excess of $15,000.00;

5.  Incidental expenses already incurred and to be incurred;

6.  Reasonable attorneys' fees and costs of suit;

7.  Punitive damages in an amount to be determined at trial;

8.  Interest at the statutory rate;

9.  A declaratory judgment as set forth above; and

/ / /

/ / /

14

10.    For such other relief as the Court deems just and proper.

DATED this 14th day of February, 2022.

**ALDRICH LAW FIRM, LTD.**

/s/ John P. Aldrich
John P. Aldrich, Esq.
Nevada Bar No. 6877
Catherine Hernandez, Esq.
Nevada Bar No. 8410
7866 West Sahara Avenue
Las Vegas, Nevada 89117
Telephone: (702) 853-5490
Facsimile: (702) 227-1975
*Attorneys for Plaintiff*

15

# EXHIBIT 1

# EXHIBIT 1



**Effective with UNDERWRITERS AT LLOYD'S, LONDON**

Administered by Hiscox Inc. d/b/a Hiscox Insurance Agency in CA License No. 0F09668
520 Madison Avenue 32nd Floor, New York, NY 10022
(646) 452-2353

# Insurance for Security Guards
## DECLARATIONS

See CA-specific Notices (D1 & D2)

| | | |
|---|---|---|
| **Broker No.:** | US 0000904 | Brown and Riding (Los Angeles) |
| **Certificate No.:** | MPL4147217.19 | 777 S Figueroa St Ste 2550 |
| **Renewal of:** | NEW | Los Angeles, CA 90017-5805 |

**1. Named Insured:** American Protection Group Inc
    **Address:** 8551 Vesper Ave
    Panorama City, CA 91402-2914

**2. Policy Period:**    **Inception Date:** 05/08/2019    **Expiration Date:** 05/08/2020
Inception date shown shall be at 12:01 A.M. (Standard Time) to Expiration date shown above at 12:01 A.M. (Standard Time) at the address of the Named Insured.

**3. General terms and conditions wording:** WCL P0001 CW (04-19)
The General terms and conditions apply to this policy in conjunction with the specific wording detailed in each section below.

**4. Endorsements:** E6020.2 - War and Civil War Exclusion Endorsement, E6015.7 - Lloyd's Syndicate (3624) Endorsement, E6017.2 - Nuclear Incident Exclusion Clause-Liability-Direct (Broad) Endorsement, E6018.2 - Applicable Law Endorsement, E6019.1 - Service of Suit (CA), E6049.2 - Shared Limits Endorsement, E6846.1 - Named Insured v. Named Insured Exclusion Endorsement (GL), and E9998.2 - TRIA Not Purchased Endorsement

**5. Optional Extension Period:** N/A

**6. Notification of claims to:** Hiscox Claims
520 Madison Avenue, 32nd floor
New York, NY 10022
Fax: 212-922-9652
Email: HiscoxClaims@Hiscox.com

| | |
|---|---|
| Premium | $90,118.00 |
| Company Fee | $0.00 |
| Broker Fee | $1,000.00 |
| Inspection Fee | $0.00 |
| State Tax | $2,703.54 |
| Stamp Fee | $180.24 |
| **Total** | **$94,001.78** |
| **CA SL Lic.#0592033** | |

**Additional Notification requirements:** NONE

**7. Policy Premium:** $90,118    **Administration Fee:** N/A    **State Surcharge:** N/A

---

## Security Guards Professional Liability Occurrence Coverage Part: WCLMPL P0010 CW (04-15)



**Effective with UNDERWRITERS AT LLOYD'S, LONDON**

Administered by Hiscox Inc. d/b/a Hiscox Insurance Agency in CA License No. 0F09668
520 Madison Avenue 32nd Floor, New York, NY 10022
(646) 452-2353

## Insurance for Security Guards
## DECLARATIONS

| | |
|---|---|
| Covered Professional Services: | solely as defined in the Security Services Professional Liability Coverage Part. |
| Professional Liability Occurrence (PL): | $ 2,000,000 Each Occurrence / $ 2,000,000 Aggregate |
| Crisis Management: | $ 25,000 Aggregate Limit (Shared Limit with PL) |
| Defense of Licensing Proceedings: | $ 10,000 Aggregate Limit (Separate Limit) |
| Subpoena Assistance: | $ 10,000 Aggregate Limit (Separate Limit) |
| Retroactive Date: | N/A |
| Retention: | $ 5,000 |
| PL Premium: | $ 45,059 |
| Endorsements: | E6080.1 - Amend General Terms and Conditions for Occurrence Coverage Part Endorsement, and E6144.5 - Defense Outside Limits Endorsement (Separate Limit) |

### General Liability Occurrence Coverage Part: WCL P0002 CW (10/14)

| | |
|---|---|
| General Liability (GL): | $ 2,000,000 Each Occurrence / $ 2,000,000 Aggregate |
| Products and Completed Operations: | $ 2,000,000 Each Occurrence Limit (Shared Limit with GL) |
| Personal and Advertising Injury: | $ 2,000,000 Each Claim Limit (Shared Limit with GL) |
| Damage to Premises: | $ 50,000 Any One Premise Limit (Shared Limit with GL) |
| Medical Payments: | $ 5,000 Each Person Limit (Separate Limit) |
| Retention: | $ 5,000 |
| GL Premium: | $ 45,059 |
| Endorsements: | E6901.2 - Products-Completed Operations Hazard Exclusion Endorsement, E6803.1 - Sexual Misconduct Exclusion Endorsement, E6805.1 - Privacy Exclusion Endorsement, E6860.1 - Security Services Enhancement Endorsement (Property in Insured's CCC Sublimit), E6801.2 - Hired and Non-Owned Auto Liability Endorsement, and E6932.1 - Contractual Liability Endorsement (Railroads) |

In accordance with the authorization granted to Hiscox Inc. under Contract No. B1234HisInc2019 by certain Underwriters at Lloyd's, London, whose names and the proportions underwritten by them can be ascertained by reference to the said Contract, which bears the Seal of Lloyd's Policy Signing Office and is on file at the office of the said Agency and in consideration of the premium specified herein, the said Underwriters do hereby bind themselves, each for their own part and not one for another, their heirs, executors and administrators, to insure as follows in accordance with the terms and conditions contained or endorsed hereon.

The Certificate terms and conditions contained herein or endorsed hereon and such other provisions, agreements or conditions as may be endorsed hereon or added hereto are hereby incorporated in this Certificate. No representative of the Underwriters shall have the power to waive or be deemed to have waived any provision or condition of this Certificate unless such waiver, if any, shall



**Effective with UNDERWRITERS AT LLOYD'S, LONDON**

Administered by Hiscox Inc. d/b/a Hiscox Insurance Agency in CA License No. 0F09668
520 Madison Avenue 32nd Floor, New York, NY 10022
(646) 452-2353

## Insurance for Security Guards

## DECLARATIONS

be written upon or attached hereto; nor shall any privilege or permission affecting the insurance under this Certificate exist or be claimed by the Insured(s) unless so written or attached.

IN WITNESS WHEREOF this Certificate has been signed at New York, New York

Authorized Representative
Kevin Kerridge
August 13, 2019
Hiscox Inc.

 **Insurance for Security Guards**

---

## A seamless integrated insurance solution for professionals.

Please read this wording, together with any **endorsements** and the declarations, very carefully. If anything is not correct, please notify **us** immediately. Please note the full extent of your and our rights and duties.

---

## Our promise to you

In return for the premium **you** have paid, **we** agree to insure **you** in accordance with the terms and conditions of the **policy**.

---

## Your policy documents

**Declarations Page**
This contains a summary of policy information including the limits of liability and retention amounts you have selected.

**General Terms and Conditions**
This contains terms and conditions which apply to the policy in its entirety, subject to any policy endorsements.

**Coverage Parts**
This contains terms and conditions which apply only to the coverage part in which they appear.

**Endorsements**
These documents modify the declarations page, general terms and conditions and/or coverage parts.

**Notices**
These documents provide information that may affect your coverage as required by your state.

---

## Complimentary risk management services

As a complimentary service to this policy, we are pleased to provide a free confidential risk management and loss prevention service, consisting of an initial consultation and up to 1-hour of legal services to assist you in better understanding and minimizing risks that commonly lead to the types of claims covered under this policy. If you have a question about minimizing these types of liability risks in your business, please email your question to us at riskmanagement@hiscox.com, along with your policy number. A Hiscox representative will get back to you within 1 (one) business day with a referral to a nationally recognized law firm with a practice specifically focused on your industry.

Please note that any inquiries made to this service will not constitute a notice of claim or potential claim under your policy. For all claim or potential claim matters, please follow the notification provisions in this policy. Please also note that this service is not intended to respond to questions regarding your insurance policy or coverage. For all such inquiries, please contact your agent or broker.

---

## Reporting a claim

Please inform us immediately if you have a claim or loss to report and refer to the Coverage Module claim reporting provisions for further details.

Email: hiscoxclaims@hiscox.com

---

Hiscox Inc.
520 Madison Avenue 32nd Floor
New York, NY 10022
Administered by Hiscox Inc. d/b/a Hiscox Insurance
Agency in CA License No. 0F09668

T (646) 452-2353
F (212) 922-9652
E hiscox.usa@hiscox.com
www.hiscoxbroker.com

Page 1 of 1

HPSCOVSLEN33



# General Terms and Conditions

| | | |
|---|---|---|
| **I.** | **Our promise to you** | In consideration of the premium charged, and in reliance on the statements made and information provided to **us**, **we** will pay **covered amounts** as defined in this policy, provided **you** properly notify **us** of **claims**, **breaches**, **events**, or **occurrences**, and meet **your** obligations to **us** in accordance with the terms of this policy. |

---

| | | |
|---|---|---|
| **II.** | **Limits of liability** | Regardless of the number of Coverage Parts **you** have purchased, the maximum **we** will pay for all **covered amounts** will be as follows: |
| A. | Coverage part limit | Each Coverage Part purchased will be subject to a **coverage part limit** (if one is stated in the Declarations), which is the maximum amount **we** will pay for all **covered amounts** under that Coverage Part, other than coverage enhancements or other items **we** have expressly agreed to pay in addition to the limit. The **coverage part limit** will be in excess of any applicable **retention**. |
| B. | Each claim limit | The Each Claim Limit identified in the Declarations is the maximum amount **we** will pay for all **covered amounts** for each covered **claim**, unless a lower sublimit is specified, in which case the sublimit is the maximum amount **we** will pay for the type of covered **claim** to which the sublimit applies. The Each Claim Limit, or any sublimit, will be in excess of any applicable **retention** and will be a part of, and not in addition to, any applicable **coverage part limit**. |
| C. | Each breach limit | The Each Breach Limit identified in the Declarations (if **you** have purchased a relevant Coverage Part) is the maximum amount **we** will pay for all **covered amounts** for each covered **breach**, unless a lower sublimit is specified, in which case the sublimit is the maximum amount **we** will pay for the type of covered **breach** or costs to which the sublimit applies. The Each Breach Limit, or any sublimit, will be in excess of any applicable **retention** and will be a part of, and not in addition to, any applicable **coverage part limit**. |
| D. | Each occurrence limit | The Each Occurrence Limit identified in the Declarations (if **you** have purchased a relevant Coverage Part) is the maximum amount **we** will pay for all **covered amounts** for each covered **occurrence**, unless a lower sublimit is specified, in which case the sublimit is the maximum amount **we** will pay for the type of covered **occurrence** to which the sublimit applies. The Each Occurrence Limit, or any sublimit, will be in excess of any applicable **retention** and will be a part of, and not in addition to, any applicable **coverage part limit**. |
| E. | General liability coverage part limits | If **you** have purchased a General Liability Coverage Part, additional rules for applying limits are contained in Section IV. Limits of liability, of that Coverage Part. |
| F. | Commercial umbrella coverage part limits | If **you** have purchased a Commercial Umbrella Coverage Part, additional rules for applying limits are contained in Section IV. Limits of liability, of that Coverage Part. |
| G. | Related claims | All **related claims**, regardless of when made, will be treated as one **claim**, and all subsequent **related claims** will be deemed to have been made against **you** on the date the first such **claim** was made. If, by operation of this provision, the **claim** is deemed to have been made during any period when **we** insured **you**, it will be subject to only one **retention** and one Each Claim Limit regardless of the number of claimants, **insureds**, or **claims** involved. |
| H. | Shared limits | If **you** have purchased a Cyber Coverage Part and a Digital Media Liability Coverage Part, the **coverage part limits** applicable to each Coverage Part will be shared, and any payments **we** make under one Coverage Part, other than coverage enhancements or other items **we** have expressly agreed to pay in addition to the limit, will reduce the **coverage part limits** for both Coverage Parts. |
| | | If the **coverage part limit** applicable to each Coverage Part is different, the maximum amount **we** will pay for **covered amounts** under both Coverage Parts combined, other than coverage enhancements or other items **we** have expressly agreed to pay in addition to the limits, will be the highest of the applicable **coverage part limits**. |

---



## General Terms and Conditions

---

### III. Your obligations to us

**A.  Named insured responsibilities**

It will be the responsibility of the **named insured** (or, if there is more than one **named insured**, the first one listed on the Declarations) to act on behalf of all **insureds** with respect to the following:

1.  timely giving and receiving notice of cancellation or non-renewal;

2.  timely payment of premium;

3.  receipt of return premiums;

4.  timely acceptance of changes to this policy; and

5.  timely payment of **retentions**.

**B.  Your duty to cooperate**

**You** must cooperate with **us** in the defense, investigation, and settlement of any **claim**, **potential claim**, **breach**, **event**, **occurrence**, or other matter notified to **us**, including but not limited to:

1.  notifying **us** immediately if **you** receive any settlement demands or offers, and sending **us** copies of any demands, notices, summonses, or legal papers;

2.  submitting to examination and interrogation under oath by **our** representative and giving **us** a signed statement of **your** answers;

3.  attending hearings, depositions, and trials as **we** request;

4.  assisting in securing and giving evidence and obtaining the attendance of witnesses;

5.  providing written statements to **our** representative and meeting with such representative for the purpose of investigation and/or defense;

6.  providing all documents and information **we** may reasonably request, including authorizing **us** to obtain records; and

7.  pursuing **your** right of recovery from others.

**C.  Your obligation not to incur any expense or admit liability**

**You** must not make any payment, incur any expense, admit any liability, assume any obligation, or enter into any settlement negotiations or agreements without **our** prior consent. If **you** do so, it will be at **your** own cost and expense.

**D.  Your representations**

**You** warrant that all representations made and all materials submitted by **you** or on **your** behalf in connection with the **application** for this policy are true, accurate, and not misleading, and agree they were relied on by **us** and were material to **our** decision to issue this policy to **you**. If **we** learn any of the representations or materials were untrue, inaccurate, or misleading in any material respect, **we** are entitled to treat this policy as if it had never existed.

---

### IV. Optional extension period

1.  If **we** or the **named insured** cancel or non-renew this policy, then the **named insured** will have the right to purchase an optional extension period for the duration and at the percentage of the expiring premium stated in Item 5 of the Declarations. The optional extension period, if purchased, will start on the effective date of cancellation or non-renewal. However, the right to purchase an optional extension period will not apply if:

    a.  this policy is canceled by **us** for nonpayment of premium; or

    b.  the total premium for this policy has not been fully paid.

2.  The optional extension period will apply only to **claims** that:

    a.  are first made against **you** and reported to **us** during the optional extension period; and

    b.  arise from **your professional services** performed, or a **breach**, **data breach**, offense, or **occurrence** that takes place, on or after the **retroactive date** but prior to the effective date of cancellation or non-renewal of this policy.

3.  The additional premium will be fully earned at the inception of the optional extension period.

---



# General Terms and Conditions

4. Notice of election and full payment of the additional premium for the optional extension period must be received by **us** within 30 days after the effective date of cancellation or non-renewal, otherwise any right to purchase the optional extension period will lapse.

The limits of liability applicable during any purchased optional extension period will be the remaining available **coverage part limit**. There will be no separate or additional limit of liability available for any purchased optional extension period.

The right to purchase an optional extension period will apply only to Coverage Parts **you** have purchased that include coverage written on a claims-made or loss occurring and discovered basis, and not to any Coverage Parts written on an occurrence basis.

## V. Other provisions affecting coverage

The following provisions apply to all Coverage Parts **you** have purchased. If there is a conflict between any of the provisions here and a provision contained in a Coverage Part, then the provision in the Coverage Part will govern the coverage provided under that Coverage Part.

**A. Alteration and assignment**

No change in, modification of, or assignment of interest under this policy will be effective unless made by written endorsement to this policy signed by **our** authorized representative.

**B. Bankruptcy or insolvency**

**Your** bankruptcy or insolvency will not relieve **us** of any of **our** obligations under this policy.

**C. Cancellation**

1. This policy may be canceled by the **named insured** by giving written notice, which must include the date the cancellation will be effective, to **us** at the address stated in the Declarations.

2. This policy may be canceled by **us** by mailing to the **named insured** by registered, certified, or other first class-mail (or by email where allowed by applicable law), at the **named insured's** address (or email address) stated in Item 1 of the Declarations, written notice which must include the date the cancellation will be effective. The effective date of the cancellation will be no less than 60 days after the date of the notice of cancellation, or ten days if the cancellation is due to nonpayment of premium.

3. The mailing (or emailing) of the notice will be sufficient proof of notice, and this policy will terminate at the date and hour specified in the notice.

4. If this policy is canceled by the **named insured**, **we** will retain the customary short rate proportion of the premium.

5. If this policy is canceled by **us**, **we** will return a pro rata proportion of the premium.

6. Payment or tender of any unearned premium by **us** will not be a condition precedent to the cancellation, but such payment will be made as soon as possible.

**D. Change in control**

If, during the policy period identified in Item 2 of the Declarations, the **named insured** consolidates with, merges into, or sells all or substantially all of its assets to any other person or entity, or any other person or entity acquires ownership or control of the **named insured**, then the **named insured** will provide **us** written notice no later than 30 days after the effective date of such change in control, together with any other information **we** may require.

**We** will not cancel this policy solely because of a change in control, but unless **you** and **we** agree in writing otherwise, after the effective date of any change in control, this policy will cover only **claims** arising from **professional services** performed, or **breaches**, **data breaches**, offenses, or **occurrences** that took place, prior to the change in control.

**E. Coverage territory**

This policy will apply to **your professional services** performed, and **breaches**, offenses, **events**, or **occurrences** that take place, anywhere in the world, provided that any action, arbitration, or other proceeding (if **you** have purchased a relevant Coverage Part) is brought within the United States, its territories or possessions, or Canada.

**F. Estates, heirs, legal representatives, spouses, and domestic partners**

In the event of an **employee's** death or disability, this policy will also apply to **claims** brought against the **employee's**:

1. heirs, executors, administrators, trustees in bankruptcy, assignees, and legal



## General Terms and Conditions

representatives; or

2.    lawful spouse or lawful domestic partner;

but only:

a.    for a covered **claim** arising from the scope of the **employee's** work for **you**; or

b.    in connection with their ownership interest in property which the claimant seeks as recovery in a covered **claim** arising from the scope of the **employee's** work for **you**.

| | | |
|---|---|---|
| G. | False or fraudulent claims | If any **insured** commits fraud in connection with any **claim**, **potential claim**, **breach**, offense, **event**, or **occurrence**, whether regarding the amount or otherwise, this insurance will become void as to that **insured** from the date the fraud is committed. |
| H. | Other insurance | Any payment due under this policy is specifically excess of and will not contribute with any other valid and collectible insurance, unless such other insurance is written specifically as excess insurance over this policy. However, if **you** have purchased a General Liability Coverage Part, rules for how that Coverage Part will be treated when there is other valid and collectible insurance are contained in Section V. Other provisions affecting coverage, D. Other insurance, of that Coverage Part. |
| | | If the same **claim** or **related claims**, **breach**, **event** or **related events**, or **occurrence** is covered under more than one Coverage Part, **we** will pay only under one Coverage Part, which will be the Coverage Part that provides the most favorable coverage. |
| I. | Subrogation | In the event of any payment by **us** under this policy, **we** will be subrogated to all of **your** rights of recovery to that payment. |
| | | **You** will do everything necessary to secure and preserve **our** subrogation rights, including but not limited to the execution of any documents necessary to allow **us** to bring suit in **your** name. |
| | | **You** will do nothing to prejudice **our** subrogation rights without **our** prior written consent. |
| | | Any recovery first will be paid to **you** up to the amount of any **retention you** have paid, and then to **us** up to the amount of any **covered amounts we** have paid. |
| J. | Titles | Titles of sections of and endorsements to this policy are inserted solely for convenience of reference and will not be deemed to limit, expand, or otherwise affect the provisions to which they relate. |

---

| | |
|---|---|
| **VI. Definitions applicable to all Coverage Parts** | The following definitions apply to all Coverage Parts **you** have purchased. If the same term is defined here and in a Coverage Part, then the definition in the Coverage Part will govern the coverage provided under that Coverage Part. |
| **Application** | means the signed application for the policy and any attachments and materials submitted with that application. If this policy is a renewal or replacement of a previous policy issued by **us**, **application** also includes all previous signed applications, attachments, and materials. |
| **Coverage part limit** | means the amount stated in the Declarations as the aggregate limit applicable to each Coverage Part **you** have purchased which is subject to an aggregate limit. |
| **Covered amounts** | means any amounts **we** have expressly agreed to pay under any Coverage Part **you** have purchased. |
| **Employee** | means any past, present, or future: |

1.    employee (including any part-time, seasonal, leased, or temporary employee or any volunteer);

2.    partner, director, officer, or board member (or equivalent position); or

3.    independent contractor;

of a **named insured**, but only while in the course of their performance of work or services on



## General Terms and Conditions

behalf of or at the direction of the **named insured**.

**Named insured**       means the individual, corporation, partnership, limited liability company, limited partnership, or other entity identified in Item 1 of the Declarations.

**Policy period**       means the period of time identified in Item 2 of the Declarations, and any optional extension period, if purchased.

**Professional services**       means those services identified as Covered Professional Services under any Coverage Part on the Declarations containing such a description.

**Related claims**       means all **claims** that are based upon, arise out of, or allege:

1.   a common fact, circumstance, situation, event, service, transaction, cause, or origin;

2.   a series of related facts, circumstances, situations, events, services, transactions, sources, causes, or origins;

3.   a continuous or repeated act, error, or omission in the performance of **your professional services**; or

4.   the same **breach**, **event**, **occurrence**, or offense.

The determination of whether a **claim** is related to another **claim** or **claims** will not be affected by the number of claimants or **insureds** involved, causes of action asserted, or duties involved.

**Retention**       means the amount or time identified as such in the Declarations.

**Retroactive date**       means the date identified as such in the Declarations.

**We, us**, or **our**       means the Underwriters identified on the Declarations as issuing this policy.

**You, your**, or **insured**       means any individual or entity expressly described as an **insured** in any Coverage Part **you** have purchased.



## HISCOX PRO™  Security Services Professional Liability Coverage Part (Occurrence)

| | |
|---|---|
| **I. What is covered** | **We** will pay up to the **coverage part limit** for **damages** and **claim expenses** in excess of the **retention** for covered **claims** against **you** resulting from an **occurrence** during the **policy period**, including but not limited to: |

1.  breach of any duty of care;
2.  negligent misstatement or negligent misrepresentation;
3.  **bodily injury**;
4.  **property damage**;
5.  **third party discrimination**; or
6.  **personal and advertising injury**,

provided **you** report the **claim** to **us** in accordance with Section V. Your obligations.

---

## II. Coverage enhancements

**We** will also make the following payments:

**Crisis management sublimit**

A.  **We** will pay up to the limit stated in the Declarations for the reasonable and necessary fees, costs, and expenses **you** incur with **our** prior written consent for a public relations firm to assist **you** in responding to a **crisis management event**, provided the **crisis management event** occurs during the **policy period**, and it is reported to **us** in accordance with Section V. Your obligations.

No **retention** will apply to amounts **we** pay under this subsection A, and any payments **we** make will be a part of, and not in addition to, the **coverage part limit**.

**Defense of licensing proceedings**

B.  **We** will pay up to the limit stated in the Declarations for the reasonable and necessary fees, costs, and expenses incurred with **our** prior consent in the investigation, defense, or appeal of any state, federal, or other licensing board inquiry or proceeding concerning **your** eligibility or license to engage in **your security services**, provided **you** first receive notice of such inquiry or proceeding during the **policy period**, it relates to **your** performance of **security services**, and it is reported to **us** in accordance with Section V. Your obligations.

No **retention** will apply to amounts **we** pay under this subsection B, and such amounts will be in addition to, and not part of, the **coverage part limit**.

**Subpoena assistance**

C.  **We** will pay up to the limit stated in the Declarations for the reasonable and necessary fees, costs, and expenses incurred with **our** prior consent to respond to a subpoena arising from the performance of **your security services**, provided **you** first receive notice of such subpoena during the **policy period**, it relates to **your** performance of **security services**, and it is reported to **us** in accordance with Section V. Your obligations.

No **retention** will apply to amounts **we** pay under this subsection C, and such amounts will be in addition to, and not part of, the **coverage part limit**.

**Supplemental payments**

D.  **We** will pay reasonable expenses, including loss of wages and a $250 travel per diem, incurred by **you** if **we** require **you** to attend depositions, arbitration proceedings, or trials in connection with the defense of a covered **claim**, but **we** will not pay more than an aggregate of $10,000 per **claim** for such expenses, regardless of the number of **insureds**.

No **retention** will apply to amounts **we** pay under this subsection D, and such amounts will be in addition to, and not part of, the **coverage part limit**.

---

## III. Who is an insured

For purposes of this Coverage Part, **you**, **your**, or **insured** means a **named insured**, **subsidiary**, **employee**, **independent contractor**, **joint venture**, or **additional insured**, as defined below:

**Named insured**

means the individual, corporation, partnership, limited liability company, limited partnership, or other entity identified in Item 1 of the Declarations.

---



# HISCOX PRO™ Security Services Professional Liability Coverage Part (Occurrence)

| | |
|---|---|
| **Subsidiary** | means any entity of which the **named insured** has majority ownership before or as of the inception of the **policy period**. |
| **Employee** | means any past, present, or future: |

1. person employed by the **named insured** or **subsidiary** as a permanent, part-time, seasonal, leased, or temporary employee, or any volunteer; or

2. partner, director, officer, or board member (or equivalent position) of the **named insured** or **subsidiary**,

but only while in the course of their performance of **security services** on behalf of or at the direction of such **named insured** or **subsidiary**.

| | |
|---|---|
| **Independent contractor** | means any person or entity contracted by the **named insured** or **subsidiary** to perform the same **security services** as the **named insured** or **subsidiary**, but only while in the course of their performance of **security services** on behalf of or at the direction of the **named insured** or **subsidiary**. |
| **Joint venture** | means a business enterprise in which the **named insured** or **subsidiary** participates pursuant to a written agreement, but only for: |

1. **security services** performed by the **named insured** or **subsidiary**; and

2. the same percentage of covered **damages** and **claim expenses** as the percentage of the **named insured's** or **subsidiary's** participation in the joint venture.

| | |
|---|---|
| **Additional insured** | means any person or organization **you** have agreed in a written contract or agreement to add as an additional insured to a policy providing the type of coverage afforded by this Coverage Part, provided the contract or agreement: |

1. is currently in effect or becomes effective during the **policy period**; and

2. was executed before the **security services** out of which the **claim** arises were performed.

Coverage is available for **additional insureds** solely for their liability arising out of **your** negligence or of those acting on **your** behalf and not for any liability arising out of the sole negligence of the **additional insured**.

Notwithstanding anything to the contrary in the subrogation provisions in the General Terms and Conditions, **we** agree to waive any right of recovery **we** may have against any **additional insured** because of payments **we** make for any **claim** arising from **your security services** under this Coverage Part.

---

## IV. Defense and settlement of claims

| | |
|---|---|
| Defense | **We** have the right and duty to defend any covered **claim**, even if such **claim** is groundless, false, or fraudulent. |
| | **We** have the right to select and appoint counsel to defend **you** against a covered **claim**. **You** may request in writing that **we** appoint defense counsel of **your** own choice, but whether to grant or deny such a request will be at **our** sole discretion. |
| Settlement | **We** have the right to solicit and negotiate settlement of any **claim** but will not enter into a settlement without **your** consent, which **you** agree not to withhold unreasonably. If **you** withhold consent to a settlement recommended by **us** and acceptable to the party who made the **claim**, the most **we** will pay for that **claim** is the sum of: |

1. the amount of **our** recommended settlement;

2. **claim expenses** incurred up to the date of **our** recommendation;

3. 50% of all **claim expenses** incurred after **our** recommendation; and

 **HISCOX PRO™**  **Security Services Professional Liability Coverage Part (Occurrence)**

4.    50% of all **damages** in excess of the settlement amount recommended by **us**.

## V.  Your obligations

| | |
|---|---|
| Notifying us of claims and coverage enhancements | **You** must give written notice to **us** of any **claim**, or any other matter covered under Section II. Coverage enhancements, as soon as possible. |
| | All such notifications must be in writing and include a copy of the **claim** or other covered matter, and must be submitted to **us** via the designated email address or mailing address identified in Item 6 of the Declarations. |
| Retention | **Our** obligation to pay **damages** and **claim expenses** under this Coverage Part is in excess of the **retention**, which **you** must pay in connection with each covered **claim**. |

## VI.  Exclusions – What is not covered

**We** will have no obligation to pay any sums under this Coverage Part, including any **damages** or **claim expenses**, for any **claim**:

| | | |
|---|---|---|
| Antitrust/deceptive trade practices | 1. | based upon or arising out of any actual or alleged: |
| | a. | false, deceptive, or unfair trade practices; |
| | b. | unfair competition, impairment of competition, restraint of trade, or antitrust violations; |
| | c. | violation of the Sherman Anti-Trust Act, the Clayton Act, the Robinson-Patman Act, all including as may be amended, or any similar federal, state, or local statutes, rules, or regulations in or outside the U.S.; or |
| | d. | deceptive or misleading advertising. |
| Bodily injury to an insured | 2. | based upon or arising out of any actual or alleged physical injury, sickness, disease, death, humiliation, mental injury, mental anguish, emotional distress, suffering, or shock sustained by an **insured** or any employee of an **insured**. |
| Breach of contract | 3. | based upon or arising out of any actual or alleged breach of any contract or agreement, or any liability of others that **you** assume under any contract or agreement; however, this exclusion will not apply to any liability **you** would have in the absence of the contract or agreement. |
| Breach of warranty/ guarantee | 4. | based upon or arising out of any actual or alleged breach of express warranties or guarantees, except any warranty or guarantee to perform **your security services** consistent with applicable industry standards or with reasonable skill or care. This exclusion will not apply to any liability **you** would have in the absence of the warranties or guarantees. |
| Criminal proceedings | 5. | brought in the form of a criminal proceeding, including but not limited to a criminal investigation, grand jury proceeding, or criminal action. |
| Employment related liability | 6. | based upon or arising out of any actual or alleged: |
| | a. | obligation under any workers' compensation, unemployment compensation, employers' liability, fair labor standards, labor relations, wage and hour, or disability benefit law, including any similar provisions of any federal, state, or local statutory or common law; |
| | b. | liability or breach of any duty or obligation owed by **you** as an employer or prospective employer; or |
| | c. | harassment, wrongful termination, retaliation, or discrimination, including but not limited to adverse or disparate impact. |
| | | However, part c of this exclusion will not apply to a covered **claim** for **third party discrimination**. |

**HISCOX PRO™** **Security Services Professional Liability Coverage Part (Occurrence)**

| | | |
|---|---|---|
| Excluded costs and damages | 7. | to the extent it seeks or includes: |
| | | a. fines, penalties, taxes, or sanctions against **you**; |
| | | b. overhead costs, general business expenses, salaries, or wages incurred by **you**; |
| | | c. the return, reduction, or restitution of fees, commissions, profits, or charges for goods provided or services rendered; |
| | | d. liquidated or multiple damages; |
| | | e. restitution, disgorgement of profits, any advantage to which **you** were not legally entitled, or unjust enrichment; or |
| | | f. the cost of complying with injunctive relief. |
| Excluded professional services | 8. | based upon or arising out of any actual or alleged performance of or failure to perform services as an architect, engineer, accountant, lawyer, insurance agent/broker, registered investment advisor, and/or security broker/dealer; however, this exclusion will not apply to **claims** brought against an **insured** who is an architect, engineer, accountant, lawyer, insurance agent/broker, registered investment advisor, and/or security broker/dealer if the **claim** arises out of the performance of **your security services**. |
| Excluded statutory violations | 9. | based upon or arising out of any actual or alleged violation of the following laws: |
| | | a. the Securities Act of 1933; |
| | | b. the Securities Exchange Act of 1934; |
| | | c. any state blue sky or securities laws; |
| | | d. the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 *et seq.*; or |
| | | e. the Employee Retirement Income Security Act of 1974, |
| | | all including as may be amended, or any similar provisions of any foreign, federal, state, or local statutory or common law and any rules or regulations promulgated under such laws. |
| Failure to maintain insurance or bonds | 10. | based upon or arising out of any actual or alleged failure to procure or maintain adequate insurance or bonds. |
| Healthcare services | 11. | based upon or arising out of any actual or alleged medical malpractice or breach of any duties owed as a healthcare provider, including but not limited to the rendering of or failure to render medical services, treatment, diagnosis, or advice. |
| Improper billing | 12. | based upon or arising out of any actual or alleged inaccurate, improper, or fraudulent billings or invoices, including but not limited to a qui tam action or any action under the False Claims Act, as may be amended, or any similar provisions of any foreign, federal, state, or local statutory or common law. |
| Insured vs. insured | 13. | brought by or on behalf of one **insured** or **affiliate** against another **insured** or **affiliate**. |
| Intellectual property | 14. | based upon or arising out of any actual or alleged infringement, use, or disclosure of any intellectual property, including but not limited to copyright, trademark, trade dress, patent, service mark, service name, title, or slogan, or any publicity rights violations, cyber squatting violations, moral rights violations, any act of passing-off, or any misappropriation of trade secret. |
| Intentional acts | 15. | based upon or arising out of any actual or alleged fraud, dishonesty, criminal conduct, or any knowingly wrongful, malicious, or intentional acts or omissions, except that: |
| | | a. **we** will pay **claim expenses** until there is a final adjudication establishing such conduct; and |
| | | b. this **exclusion** will not apply to: |
| | | (i) otherwise covered intentional acts or omissions resulting in **personal and advertising injury**; or |

 **HISCOX PRO™** **Security Services Professional Liability Coverage Part (Occurrence)**

(ii) **bodily injury** or **property damage** directly resulting from **your** performance of **security services**, including the use of reasonable force in the performance of **security services** to protect persons or property.

This exclusion will apply to the **named insured** or **subsidiary** only if the conduct was committed or allegedly committed by any:

a. partner, director, officer, or member of the board (or equivalent position) of the **named insured** or **subsidiary**; or

b. employee of the **named insured** or **subsidiary** if any partner, director, officer, member of the board (or equivalent position) of the **named insured** or **subsidiary** knew or had reason to know of such conduct by the employee.

This exclusion will apply separately to each **insured** and will not apply to any **insured** who did not commit, participate in, acquiesce to, or ratify such conduct committed by another **insured**.

| | | |
|---|---|---|
| Manufacture of goods/ products | 16. | based upon or arising out of any goods or products manufactured, sold, handled, or distributed by **you**. |
| Misappropriation of funds | 17. | based upon or arising out of the actual or alleged theft, misappropriation, commingling, or conversion of any funds, monies, assets, or property, including any client's funds, monies, assets, or property. |
| Mold | 18. | based upon or arising out of any actual, alleged, or threatened existence, growth, release, escape of, exposure to, inhalation of, or contact with mold, spores, or fungi. |
| Pollution/environmental | 19. | based upon or arising out of any actual, alleged, or threatened discharge, dispersal, release, or escape of **pollutants**, including any direction or request to test for, monitor, clean up, remove, contain, treat, detoxify, or neutralize **pollutants**. |
| Prior acts/notice/knowledge | 20. | based upon or arising out of any **occurrence** that: |

a. occurred prior to the **policy period**;

b. was the subject of any notice given under any other policy of which this policy is a renewal or replacement;

c. was the subject of, or is related to, any prior or pending litigation, **claim**, written demand, arbitration, administrative or regulatory proceeding or investigation, or licensing proceeding that was filed or commenced against **you** and of which **you** had notice prior to the **policy period**; or

d. **you** had knowledge of prior to the **policy period**, and there was a reasonable basis to believe that the act, error, or omission could result in a **claim**.

Any **occurrence**, injury, or damage known prior to the **policy period** which continues, changes, or resumes during or after the **policy period** will be deemed to have been known prior to the **policy period**.

| | | |
|---|---|---|
| Privacy | 21. | based upon or arising out of any actual or alleged: |

a. unauthorized acquisition, access, use, or disclosure of, improper collection or retention of, or failure to protect any non-public personally identifiable information or confidential corporate information that is in **your** care, custody, or control; or

b. violation of any privacy law or consumer data protection law protecting against the use, collection, or disclosure of any information about a person or any confidential corporate information.

| | | |
|---|---|---|
| Sexual misconduct | 22. | based upon or arising out of any actual, alleged, or threatened abuse, molestation, harassment, mistreatment, or maltreatment of a sexual nature, including the negligent employment, investigation, supervision, training, or retention of a person who commits such conduct, or the failure to report such conduct to the proper authorities. |

 **Security Services Professional Liability Coverage Part (Occurrence)**

| | | |
|---|---|---|
| Subsidiary outside control of named insured | 23. a. | based upon or arising out of **security services** performed by or on behalf of a past or present **subsidiary** while the **named insured** does not have majority ownership or management control of it; or |
| | b. | made against a **subsidiary** or anyone acting on its behalf while the **named insured** does not have majority ownership or management control of it. |
| Unsolicited telemarketing | 24. | based upon or arising out of any actual or alleged violation of any federal, state, local, or foreign statutes, ordinances, or regulations relating to unsolicited telemarketing, solicitations, emails, faxes, text messages, or any other communications of any type or nature, including but not limited to the Telephone Consumer Protection Act, CAN-SPAM Act, or any "anti-spam" or "do-not-call" statutes, ordinances, or regulations. |

---

## VII. Definitions

The following definitions apply to this Coverage Part. Additional definitions are contained in Section III. Who is an insured, and in the General Terms and Conditions, Section VI. Definitions applicable to all Coverage Parts.

**Affiliate**

means any person or entity related to any **insured** through common ownership, control, or management. **Affiliate** does not include a **subsidiary**.

**Bodily injury**

means physical injury, sickness, disease, or death sustained by a person, which directly results from **your** performance of **security services**, and any resulting humiliation, mental injury, mental anguish, emotional distress, suffering, or shock.

**Claim**

means any written assertion of liability or any written demand for financial compensation or non-monetary relief.

**Claim expenses**

means the following sums incurred in excess of the **retention** and with **our** prior written consent:

1. all reasonable and necessary fees, costs, and expenses (including the fees of attorneys and experts) incurred in the investigation, defense, or appeal of a **claim**; and

2. premiums on appeal bonds, attachment bonds, or similar bond, but **we** will have no obligation to apply for or furnish any such bonds.

**Crisis management event**

means the public announcement of any of the following events which, in **your** good faith opinion, had or is reasonably likely to have an adverse impact on **your** reputation:

1. an actual or alleged negligent act, error, or omission in the performance of **your security services** on or after the **retroactive date**;

2. the death, incapacity, or criminal indictment of any partner, director, officer, or board member (or equivalent position) of the **named insured**; or

3. an **employee** was the victim of a violent crime while on the **named insured's** premises.

**Damages**

means the following amounts incurred in excess of the **retention**:

1. a monetary judgment or monetary award that **you** are legally obligated to pay (including pre- or post-judgment interest and awards of claimant's attorney fees); or

2. a monetary settlement negotiated by **us** with **your** consent.

**Damages** includes punitive damages to the full extent they are insurable under the law of any applicable jurisdiction that most favors coverage.

**Occurrence**

means an actual or alleged negligent act, error, or omission in **your** performance of **security services**.

**Personal and advertising injury**

means injury, other than **bodily injury** or **property damage**, arising out of one or more of the following offenses:

1. false arrest, detention, or imprisonment;

2. malicious prosecution;



# Security Services Professional Liability Coverage Part (Occurrence)

3.   wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of premises;

4.   slander, libel, or defamation, or disparagement of goods, products, or services, whether in connection with **your security services** or **your** advertising of it; or

5.   oral or written publication of material, whether in connection with **your security services** or **your** advertising of it, that violates a person's right of privacy.

**Pollutants**
means any solid, liquid, gaseous, biological, radiological, or thermal irritant or contaminant, including smoke, vapor, asbestos, silica, dust, nanoparticles, fibers, soot, fumes, acids, alkalis, chemicals, nuclear materials, germs, and waste. Waste includes, but is not limited to, materials to be recycled, reconditioned, or reclaimed.

**Property damage**
means physical damage to or destruction of any tangible property which directly results from **your** performance of **security services**, and any resulting loss of use of that property.

**Retention**
means the amount stated as such under the Security Services Professional Liability Coverage Part section of the Declarations.

**Security services**
means:

1.   the services customarily performed by a security guard, watchperson, bank guard, patroller, traffic controller, or other individual employed in the private security industry, which, for purposes of this policy, means services performed in connection with guarding and protecting people, property, or other assets, or the delivery or transportation of monies, funds, or other property for or on behalf of a client of the **named insured**; or

2.   any other services identified as Covered Professional Services under the Security Services Professional Liability Coverage Part section of the Declarations.

**Security services** also includes the use of reasonable force in connection with the protection of people, property, or other assets, or the delivery or transportation of monies, funds, or other property, including the use of physical force, weapons, mace, firearms, stun guns, Tasers, and/or canine patrols.

**Third party discrimination**
means any non-physical harassment of or unlawful discrimination against a person or entity other than an **insured** or an employee of an **insured**, including any resulting violation of civil rights, but only if such harassment or discrimination directly results from **your** performance of **security services**.

**You**, **your**, or **insured**
means a **named insured**, **subsidiary**, **employee**, **independent contractor**, **joint venture**, or **additional insured**, as defined in Section III. Who is an insured.

 **HISCOX PRO**™  **General Liability Coverage Part (Occurrence)**

## I.  What is covered

**A.  Bodily injury and property damage**

**We** will pay up to the **coverage part limit** for **damages you** become legally obligated to pay because of **bodily injury** or **property damage** to which this Coverage Part applies, provided:

1.  the **bodily injury** or **property damage** occurs during the **policy period**;

2.  the **bodily injury** or **property damage** is caused by an **occurrence** that takes place in the **coverage territory**; and

3.  **you** have paid the applicable **retention** stated in the Declarations.

**We** will have the right and duty to defend any **claim** seeking such **damages**, as set out in Section II. Defense and supplementary payments. **We** may, at **our** discretion, investigate any **occurrence** and settle any **claim** that may result.

**B.  Personal and advertising injury**

**We** will pay up to the Personal and Advertising Injury Limit stated in the Declarations for **damages you** become legally obligated to pay because of **personal and advertising injury** to which this Coverage Part applies, provided:

1.  the **personal and advertising injury** is caused by an offense arising out of **your** business operations;

2.  the **personal and advertising injury** is caused by an offense committed in the **coverage territory** during the **policy period**; and

3.  **you** have paid the applicable **retention** stated in the Declarations.

**We** will have the right and duty to defend any **claim** seeking such **damages**, as set out in Section II. Defense and supplementary payments. **We** may, at **our** discretion, investigate any offense and settle any **claim** that may result.

**C.  Medical payments**

Regardless of fault, **we** will pay up to the Medical Payments limit stated in the Declarations for **medical expenses** incurred by each person for **bodily injury** caused by an **accident** to which this Coverage Part applies, provided:

1.  the **accident** takes place within the **coverage territory** and on premises rented to or owned by **you** or in connection with **your** business operations;

2.  the **accident** occurs during the **policy period**;

3.  the expenses are incurred and reported to **us** within one year of the date of the **accident**; and

4.  the person who sustained such **bodily injury** submits to examination, at **our** expense, by physicians of **our** choice as often as **we** reasonably require.

## II.  Defense and supplementary payments

**A.  Claims against you**

With respect to any **claim** against **you** that **we** investigate, defend, or settle, **we** will pay:

1.  **claim expenses we** incur with counsel of **our** choice to defend **you**;

2.  up to $2,500 for the cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the **bodily injury** coverage described in Section I. What is covered, A. Bodily injury and property damage, applies, but **we** will have no obligation to apply for or furnish any such bonds;

3.  the cost of bonds to release attachments, but only for bond amounts within the applicable limit. **We** will have no obligation to apply for or furnish any such bonds;

4.  reasonable expenses incurred by **you** at **our** request to assist **us** in the investigation or defense of such **claim**, including actual loss of earnings up to $1,000 a day because of time off from work;

 **HISCOX PRO™** **General Liability Coverage Part (Occurrence)**

5. court costs taxed against **you** in the **claim**; however, costs do not include attorney fees or expenses;

6. prejudgment interest awarded against **you** on that part of any judgment **we** pay. If **we** make an offer to pay the applicable limit, **we** will not pay any prejudgment interest based on the period of time after the offer; and

7. interest on the full amount of any judgment that accrues after entry of the judgment and before **we** have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit.

B. Claims against your indemnitee

If **we** defend a **claim** against **you**, and **your** indemnitee is also named as a party to the **claim**, **we** will also defend such indemnitee if all of the following conditions are met:

1. the **claim** against the indemnitee seeks **damages** for which **you** have assumed the indemnitee's liability in an **insured contract**;

2. **you** have assumed the obligation to defend or pay for the defense of the indemnitee in the same **insured contract**;

3. this Coverage Part would apply to the liability **you** have assumed if the **claim** against the indemnitee had been made against **you**;

4. the allegations in the **claim** and the information **we** know about the **occurrence** are such that no conflict of interest appears to exist between **your** interests and **your** indemnitee's interests;

5. **you** and **your** indemnitee request that **we** conduct and control the defense of such indemnitee and agree **we** can assign the same counsel to defend both **you** and **your** indemnitee; and

6. **your** idemnitee agrees in writing to:

   a. follow the requirements of Section III. Your obligations to us, B. Your duty to cooperate, of the General Terms and Conditions;

   b. notify any other insurer whose coverage may be available to the indemnitee and cooperate with **us** with respect to coordinating any other insurance applicable to the indemnitee; and

   c. authorize **us** to conduct and control the defense of the indemnitee.

**Our** obligation to make any payments under this Section II ends when **we** have used up the **coverage part limit**.

No **retention** will apply to amounts **we** pay under this Section II, and such payments will be in addition to, and not part of, the **coverage part limit**.

## III. Who is an insured

In addition to the **named insured**, other persons or organizations may qualify as **insureds**, as stated below. For purposes of this Section III only, **you** means the **named insured**.

A. Sole proprietorships

If **you** are an individual, **you** and **your** spouse are **insureds**, but only with respect to the conduct of a business of which **you** are the sole owner. However, if **you** die:

1. persons or organizations having proper temporary custody of **your** property are **insureds**, but only with respect to the maintenance or use of such property and only for acts until **your** legal representative has been appointed; and

2. **your** legal representative is an **insured**, but only with respect to his or her duties as **your** legal representatives. As such, they will assume **your** legal rights and duties under this Coverage Part.

B. Partnerships or joint ventures

If **you** are a duly organized partnership (including a limited liability partnership) or a joint venture, **your** members, partners, and their spouses are **insureds**, but only with respect to the conduct of **your** business.



**HISCOX PRO™**   **General Liability Coverage Part (Occurrence)**

| | | |
|---|---|---|
| C. | Limited liability companies | If **you** are a duly organized limited liability company, **your** members and their spouses are **insureds**, but only with respect to the conduct of **your** business. **Your** managers are also **insureds**, but only with respect to their duties as **your** managers. |
| D. | Other organizations | If **you** are an organization (including a professional corporation) other than a partnership, joint venture, or limited liability company, **your** directors and **officers** are **insureds**, but only with respect to their duties as **your** directors or **officers**. **Your** stockholders and their spouses are also **insureds**, but only with respect to their liability as **your** stockholders. |
| E. | Trusts | If **you** are a trust, **your** trustees are **insureds**, but only with respect to their duties as **your** trustees. |
| F. | Employees | **Your employees** are **insureds**, but only while in the course and scope of their employment by **you** or while performing duties related to the conduct of **your** business. |
| G. | Volunteer workers | **Your volunteer workers** are **insureds**, but only while in the course and scope of their activities related to the conduct of **your** business performed on **your** behalf or at **your** direction. |
| H. | Real estate managers | Persons (other than **your employees**) or organizations acting as **your** real estate managers are **insureds**, but only with respect to their duties as **your** real estate managers. |
| I. | Amateur athletic participants | Any person representing **you** while participating in an amateur athletic activity **you** sponsor is an **insured**. However, no such person is an **insured** for: |

I. (continued)

1. **bodily injury** to:

   a. a co-participant, **your employee**, or **your volunteer worker** while also participating in the amateur athletic activity **you** sponsor; or

   b. **you** or any of **your** partners, members, or **officers**; or

2. **property damage** to property owned, occupied, or used by; rented to; or in the care, custody, or control of:

   a. a co-participant in the amateur athletic activity **you** sponsor, **your employee**, or **your volunteer worker**; or

   b. **you** or any of **your** partners, members, or **officers**.

| | | |
|---|---|---|
| J. | Newly acquired or formed organizations | If there is no other similar insurance available, any organization **you** acquire or form during the **policy period**, and in which **you** have majority ownership or interest at the time of an **occurrence** or offense covered by this Coverage Part, will qualify as an **insured**. This coverage is effective on the date of acquisition or formation and is afforded only until the 180th day after **you** acquire or form the organization, or the end of the **policy period**, whichever is earlier. |

There is no coverage for the acquired or formed organization for:

1. **bodily injury** or **property damage** that occurred; or

2. **personal or advertising injury** arising out of an offense that was committed,

before **you** acquired or formed the organization.

The acquired or formed organization is an **insured** only with respect to the conduct of **your** business.

| | | |
|---|---|---|
| K. | Additional insureds | If **you** have agreed in a written contract or agreement to add them as an additional insured to a policy providing the type of coverage afforded by this Coverage Part, the following persons or organizations are **insureds**: |

1. Any person or organization from whom **you** lease any premises, but only with respect to liability arising out of the ownership, maintenance, or use of that part of the premises leased to **you**.

   However, there is no coverage for such additional insureds for any structural alterations, new construction, or demolition operations performed by or on behalf of the additional insured.

---

Includes copyrighted material of Insurance
Services Offices, Inc., with its permission

**HISCOX PRO™ General Liability Coverage Part (Occurrence)**

A person or organization's status as an additional insured under this subsection 1 ends when **you** cease to be a tenant in the premises.

2. Any person or organization for whom **you** are performing operations, but only with respect to liability arising out of:

   a. **your** acts or omissions or of those acting on **your** behalf; and

   b. the performance of **your** ongoing operations for the additional insured.

   However, there is no coverage for such additional insureds for:

   a. **bodily injury**, **property damage**, or **personal and advertising injury** arising out of the rendering of or failure to render any professional architectural, engineering, or surveying services, including:

      (1) the preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders, drawings, or specifications; or

      (2) supervisory, inspection, architectural, or engineering activities; or

   b. **bodily injury** or **property damage** occurring after:

      (1) all work, including materials, parts, or equipment furnished in connection with such work, on the project (other than service, maintenance, or repairs) to be performed by or on behalf of the additional insured at the location of the covered operations has been completed; or

      (2) that portion of **your work** out of which the injury or damage arises has been put to its intended use by any person or organization other than another contractor or subcontractor engaged in performing operations for a principal as a part of the same project.

   A person or organization's status as an additional insured under this subsection 2 ends when **your** operations for that additional insured are completed.

3. Any person or organization who sells or distributes **your products** (referred to in this subsection as "vendor"), but only with respect to **bodily injury** or **property damage** arising out of **your products** sold or distributed in the regular course of such vendor's business.

   However, there is no coverage for such additional insureds for:

   a. **bodily injury** or **property damage** for which the vendor is legally obligated to pay **damages** because of liability assumed in a contract or agreement; however, this exclusion will not apply to liability the vendor would have in the absence of such contract or agreement;

   b. any express warranty unauthorized by **you**;

   c. any physical or chemical change in the product made intentionally by the vendor;

   d. repackaging, except when unpacked solely for the purpose of inspection, demonstration, testing, or the substitution of parts under instructions from the manufacturer, and then repackaged in the original container;

   e. any failure to make inspections, adjustments, tests, or servicing the vendor has either agreed to make or normally undertakes to make in the usual course of business, in connection with the distribution or sale of the product;

   f. demonstration, installation, servicing, or repair operations, except such operations performed at the vendor's premises in connection with the sale of the product;

   g. products which, after distribution or sale by **you**, have been labeled or relabeled or used as a container, part, or ingredient of any other thing by or for the vendor;

   h. **bodily injury** or **property damage** arising out of the sole negligence of the vendor for its own acts or omissions or those of its employees or anyone else acting on its behalf; however, this exclusion will not apply to:

HISCOX PRO™ **General Liability Coverage Part (Occurrence)**

    (1)   repackaging when unpacked solely for the purpose of inspection, demonstration, testing, or the substitution of parts under instructions from the manufacturer, and then repackaged in the original container;

    (2)   demonstration, installation, servicing, or repair operations performed at the vendor's premises in connection with the sale of the product; or

    (3)   inspections, adjustments, tests, or servicing the vendor has either agreed to make or normally undertakes to make in the usual course of business, in connection with the distribution or sale of the product.

This insurance does not apply to any person or organization from whom **you** have acquired:

    a.   products;

    b.   any ingredient or part of any product; or

    c.   any container containing any products.

4.   Any person or organization from whom **you** lease any equipment, but only with respect to liability arising out of **your** maintenance, operation, or use of such equipment.

    A person or organization's status as an additional insured under this subsection 4 ends when the equipment lease expires, and this insurance will not apply to any **occurrence** or offense which takes place after such expiration.

5.   Any other person or organization not included in 1 through 4 above, provided the contract or agreement:

    a.   is currently in effect or becomes effective during the **policy period**; and

    b.   was executed before the **bodily injury** or **property damage** occurred or the offense out of which the **personal and advertising injury** arises was committed.

Coverage is available for additional insureds solely for their liability arising out of **your** negligence or of those acting on **your** behalf and not for any liability arising out of the sole negligence of the additional insured.

Notwithstanding anything to the contrary in the other insurance provisions in the General Terms and Conditions or in this Coverage Part, the coverage available under this Coverage Part to any additional insured will be primary and non-contributory, and any other insurance available to the additional insured for the same **claim** or **occurrence** will be specifically excess of the **coverage part limit**.

Notwithstanding anything to the contrary in the subrogation provision in the General Terms and Conditions, **we** agree to waive any right of recovery **we** may have against any additional insured because of payments **we** make for injury or damage arising out of:

1.   the ownership, maintenance, or use of that part of any premises leased to **you**;

2.   **your** ongoing operations; or

3.   **your work** done under a contract with the additional insured and included in the **products-completed operations hazard**.

The limits of liability applicable to any additional insured are either the amounts specified in the contract or agreement requiring them to be added as an additional insured, or the limits identified in the Declarations, whichever is less, and such amounts will be a part of, and not in addition to, the **coverage part limit**.

## IV. Limits of liability

The limits stated in the Declarations and the rules below will be the most **we** will pay regardless of the number of:

1.   **insureds**;

2.   **claims** made or brought; or

3.   persons or organizations making or bringing **claims**.



# HISCOX PRO™ General Liability Coverage Part (Occurrence)

| | | |
|---|---|---|
| A. | Per location limit | The Per Location Limit identified in the Declarations is the most **we** will pay for all **damages** because of **bodily injury** and **property damage** occurring at each separate location where **you** perform business operations arising out of any one **occurrence**. This limit will apply only if an endorsement listing **your** separate locations is added to this Coverage Part. |
| B. | Products-completed operations limit | The Products-Completed Operations Limit identified in the Declarations is the most **we** will pay for all **damages** because of **bodily injury** and **property damage** included in the **products-completed operations hazard** arising out of any one **occurrence** |
| C. | Personal and advertising injury limit | The Personal and Advertising Injury Limit identified in the Declarations is the most **we** will pay for all **damages** because of **personal and advertising injury** arising out of any one **claim**. |
| D. | Damage to premises limit | The Damage to Premises limit identified in the Declarations is the most **we** will pay for all **damages** because of **property damage** to any one premises while rented to **you** or temporarily occupied by **you** with permission of the owner. |
| E. | Elevator liability sublimit | An Elevator Liability Sublimit of $25,000 is the most **we** will pay for all **damages** because of **property damage** resulting from the use of an elevator at premises **you** own, rent, or occupy and arising out of any one **occurrence**. |
| F. | Medical payments limit | The Medical Payments limit identified in the Declarations is the most **we** will pay for the sum of **medical expenses** for **bodily injury** sustained by any one person covered under Section I. What is covered, C. Medical payments. |

No **retention** will apply to amounts **we** pay under Section I. What is covered, C. Medical payments, and such amounts will be in addition to, and not part of, the **coverage part limit**.

All other limits described in this Section IV will be in excess of the **retention** and will be a part of, and not in addition to, the **coverage part limit**.

---

## V. Other provisions affecting coverage

| | | | |
|---|---|---|---|
| A. | Notifying us of claims, occurrences, or offenses | 1. | **You** must give written notice to **us** of any **claim** made or brought against **you** as soon as possible, including the specifics of the **claim** and the date received. |
| | | 2. | **You** must give written notice to **us** of any **occurrence** or offense which may result in a **claim** as soon as possible. To the greatest extent possible, the notice must include: |
| | | | a. how, when, and where the **occurrence** or offense took place; |
| | | | b. the names and addresses of any injured persons and witnesses; and |
| | | | c. the nature and location of any injury or damage arising out of the **occurrence** or offense. |
| | | | All such notifications must be in writing and include a copy of any **claim**, and must be submitted to **us** via the designated email address or mailing address identified in Item 6 of the Declarations. |
| B. | Retention | | **Our** obligation to pay any **damages** under this Coverage Part is in excess of the **retention**, which **you** must pay in connection with each covered **occurrence** or offense. The **retention** does not apply to **claim expenses** or any other payments **we** make under Section II. Defense and supplementary payments. |
| C. | Legal action against us | | No person or organization has a right under this Coverage Part: |
| | | 1. | to join **us** as a party or otherwise bring **us** into a **claim** seeking **damages** from **you**; or |
| | | 2. | to sue **us** on this Coverage Part unless all of its terms and conditions have been fully complied with. |

---

Includes copyrighted material of Insurance Services Offices, Inc., with its permission

# HISCOX PRO™    General Liability Coverage Part (Occurrence)

A person or organization may sue **us** to recover on an agreed settlement or final judgment against **you**, but **we** will not be liable for **damages** that are not covered under this Coverage Part or that are in excess of the applicable limits. An agreed settlement means a settlement and release of liability signed by **us**, **you**, and the claimant or claimant's legal representative.

**D.    Other insurance**

For purposes of this Coverage Part, the Other insurance provision in Section V. Other provisions affecting coverage, of the General Terms and Conditions is replaced by the following:

If other valid and collectible insurance is available to **you** for a **claim** **we** would otherwise cover under this Coverage Part, **our** obligations are limited as follows:

1.  <u>Primary insurance</u> - This Coverage Part is primary except when the Excess insurance provision below applies. If this Coverage Part is primary, **our** obligations are not affected unless any of the other insurance is also primary. Then, **we** will share with any other insurance by the method described in the Method of sharing provision below.

2.  <u>Excess insurance</u> - This Coverage Part is excess over any other insurance, whether primary, excess, contingent, or on any other basis:

    a.  that provides fire, extended coverage, builder's risk, installation risk, or similar coverage for **your work**;

    b.  that applies to **property damage** to premises rented to **you** or temporarily occupied by **you** with permission of the owner;

    c.  if the loss arises out of aircraft, **autos**, or watercraft (to the extent not subject to Exclusion A. 1. Aircraft, autos, or watercraft);

    d.  that is insurance available to **you** because **you** have been added as an additional insured.

    When this Coverage Part is excess, **we** have no duty to defend **you** against any **claim** if any other insurer has a duty to defend **you** against such **claim**. If no other insurer defends, **we** will undertake to do so, but **we** will be entitled to **your** rights against those other insurers.

    When this Coverage Part is excess over other insurance, **we** will pay only **our** share of the amount of loss, if any, that exceeds the sum of:

    a.  the total amount that all other insurance would pay for loss in the absence of this Coverage Part; and

    b.  the total of all deductible and self-insured amounts under all other insurance and this Coverage Part.

    **We** will share the remaining loss, if any, with any other insurance that is not described in this Excess insurance provision and was not purchased or agreed specifically to apply in excess of this Coverage Part.

3.  <u>Method of sharing</u>

    If all of the other insurance permits contribution by equal shares, **we** will contribute by equal shares. Under this method, each insurer contributes equal amounts until it has paid its applicable limits or none of the loss remains, whichever occurs first.

    If any other insurance does not permit contribution by equal shares, **we** will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limits to the total applicable limits of all insurers.

**E.    Separation of insureds**

Except with respect to the limits and any rights or duties specifically assigned to the **named insured**, this Coverage Part applies separately to each **insured** against whom a **claim** is made or brought.

# VI.  Exclusions – What is not covered

---



# HISCOX PRO™  General Liability Coverage Part (Occurrence)

| | | |
|---|---|---|
| **A.** | **Bodily injury and property damage exclusions** | **We** will have no obligation to pay any sums under this Coverage Part, including any **damages** or **claim expenses**, for any **claim** for: |

Aircraft, autos, or watercraft

1. **bodily injury** or **property damage** arising out of the ownership, maintenance, use, or entrustment to others of any aircraft, **auto**, or watercraft owned or operated by or rented or loaned to **you**. Use includes operation and **loading and unloading**.

   This exclusion will apply even if the **claim** against **you** alleges negligence or other wrongdoing in the supervision, hiring, employment, training, or monitoring of others by **you**, if the **occurrence** causing the **bodily injury** or **property damage** involved the ownership, maintenance, use, or entrustment to others of any aircraft, **auto**, or watercraft owned or operated by or rented or loaned to **you**.

   However, this exclusion will not apply to:

   a. watercraft while ashore on premises owned by or rented to **you**;

   b. watercraft **you** do not own, provided it is:

      (1) less than 75 feet long; and

      (2) not being used to transport persons or property for a charge;

   c. the parking of an **auto** on, or on the ways next to, premises owned by or rented to **you**, provided the **auto** is not owned by or rented or loaned to **you**;

   d. liability assumed in an **insured contract** for the ownership, maintenance, or use of an aircraft or watercraft by others;

   e. **bodily injury** or **property damage** arising out of:

      (1) the operation of machinery or equipment that is attached to, or part of, a land vehicle that would qualify under the definition of **mobile equipment** if it were not subject to a compulsory financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged; or

      (2) operation of the equipment described in 6.b or 6.c of the definition of **mobile equipment**; or

   f. aircraft **you** do not own. However, this Coverage Part will be excess over any other insurance that applies to such aircraft, whether primary, excess, contingent, or on any other basis, and the rules stated in Section V. Other provisions affecting coverage, D. Other insurance, 2. Excess insurance will apply.

Damage to impaired property or property not physically injured

2. **property damage** to **impaired property** or property that has not been physically injured arising out of:

   a. a defect, deficiency, inadequacy, or dangerous condition in **your product** or **your work**; or

   b. a delay or failure by **you** or anyone acting on **your** behalf to perform a contract or agreement in accordance with its terms and conditions.

   However, this exclusion will not apply to the loss of use of other property arising out of sudden and accidental physical injury to **your product** or **your work** after it has been put to its intended use.

Damage to property

3. **property damage** to:

   a. property **you** own, rent, or occupy, including any costs or expenses incurred by **you** or any other person or organization for repair, replacement, enhancement, restoration, or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;

   b. premises **you** sell, give away, or abandon, if the **property damage** arises out of any part of those premises;

   c. property loaned to **you**;

   d. personal property in **your** care, custody, or control;

Includes copyrighted material of Insurance Services Offices, Inc., with its permission

 **HISCOX PRO™** **General Liability Coverage Part (Occurrence)**

    e.    that particular part of real property on which **you** or any contractors or subcontractors working directly or indirectly on **your** behalf are performing operations, if the **property damage** arises out of those operations; or

    f.    that particular part of any property that must be restored, repaired, or replaced because **your work** was incorrectly performed on it.

Subsections a, c, and d of this exclusion will not apply to **property damage** (other than damage by fire) to premises (including the contents of the premises) rented to **you** for seven or fewer consecutive days. However, any payments **we** make for **property damage** to such property will be subject to the Damage to Premises Limit.

Subsection b of this exclusion will not apply if the premises are **your work** and were never occupied, rented, or held for rental by **you**.

Subsections c, d, e, and f of this exclusion will not apply to liability assumed under a sidetrack agreement.

Subsection f of this exclusion will not apply to **property damage** included in the **products-completed operations hazard**.

Subsections c, d, and f of this exclusion will not apply to **property damage** arising out of the use of an elevator at premises **you** own, rent, or occupy. However, any payments **we** make for such **property damage** will be subject to the Elevator Liability Sublimit.

Subsection d of this exclusion will not apply to **property damage** to equipment **you** borrow while at a job site, but only if it is not being used by anyone to perform operations at the time of such **property damage**.

| | | |
|---|---|---|
| Damage to your product | 4. | **property damage** to **your product** arising out of it or any part of it; however, this exclusion will not apply to **property damage** arising out of the use of an elevator at premises **you** own, rent, or occupy, but any payments **we** make for such **property damage** will be subject to the Elevator Liability Sublimit. |
| Damage to your work | 5. | **property damage** to **your work** arising out of it or any part of it and included in the **products-completed operations hazard**; however, this exclusion will not apply if the damaged work or the work out or which the damage arises was performed on **your** behalf by a subcontractor. |
| Expected or intended Injury | 6. | **bodily injury** or **property damage** expected or intended from the standpoint of any **insured**; however, this exclusion will not apply to **bodily injury** or **property damage** resulting from the use of reasonable force to protect persons or property. |
| Injury to employee | 7. | a.    **bodily injury** to **your employee** arising out of and in the course and scope of employment by **you** or while performing duties related to the conduct of **your** business; or |
| | | b.    **bodily injury** to the spouse, child, parent, brother, or sister of such **employee** as a consequence of any **bodily injury** described in paragraph 7.a above. |

This exclusion will apply:

    a.    whether **you** may be liable as an employer or in any other capacity; and

    b.    to any obligation to share **damages** with or repay someone else who must pay **damages** because of any injury described in paragraphs 7.a and 7.b above.

However, this exclusion will not apply to:

    a.    liability for **damages you** assume in an **insured contract**; or

    b.    **bodily injury** arising out of and in the course and scope of domestic employment by **you**, unless benefits for such injury are in whole or in part either payable or required to be provided under any workers' compensation law.

| | | |
|---|---|---|
| Liquor liability | 8. | **bodily injury** or **property damage** for which **you** may be held liable by reason of: |
| | | a.    causing or contributing to the intoxication of any person; |

---

 **HISCOX PRO™** **General Liability Coverage Part (Occurrence)**

|  |  | b. | furnishing alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or |

       c.   any statute, ordinance, or regulation relating to the sale, gifting, distribution, or use of alcoholic beverages.

However, this exclusion will apply only if **you** are in the business of manufacturing, distributing, selling, serving, or furnishing alcoholic beverages.

**Mobile equipment** 9. **bodily injury** or **property damage** arising out of:

       a.   the transportation of **mobile equipment** by an **auto** owned or operated by or loaned or rented to **you**; or

       b.   the use of **mobile equipment** in, while in practice for, or while being prepared for, any prearranged racing, speed, demolition, or stunting activity.

**Prior knowledge** 10. **bodily injury** or **property damage** which:

       a.   **you**;

       b.   any **insured** listed in A through E of Section III. Who is an insured; or

       c.   any **employee** authorized by **you** to give or receive notice of an **occurrence** or **claim**,

knew had occurred prior to the **policy period**.

Any continuation, change, or resumption of any such **bodily injury** or **property damage** during or after the **policy period** will be deemed to have been known prior to the **policy period**.

**Bodily injury** or **property damage** will be deemed to be known if **you**, any **insured** listed in A through E of Section III. Who is an insured, or any **employee** authorized by **you** to give or receive notice of an **occurrence** or **claim**:

       a.   reports all or any part of the **bodily injury** or **property damage** to **us** or any other insurer;

       b.   receives a **claim** because of the **bodily injury** or **property damage**; or

       c.   becomes aware by any other means that the **bodily injury** or **property damage** has occurred or has begun to occur.

Exclusions 1, 2, 3, 4, 5, 8, and 9 of this Section A do not apply to damage by fire to premises while rented to **you** or temporarily occupied by **you** with the owner's permission. However, any payments **we** make for **property damage** to such premises will be subject to the Damage to Premises Limit.

**B. Personal and advertising injury exclusions**

**We** will have no obligation to pay any sums under this Coverage Part, including any **damages** or **claim expenses**, for any **claim** for **personal and advertising injury**:

**Breach of contract** 1. based upon or arising out of any breach of contract, except an implied contract to use another's advertising idea in **your advertisement**.

**Failure to conform to statements** 2. based upon or arising out of the failure of goods, products, or services to conform with any statement of quality or performance made in **your advertisement**.

**Insureds in media and internet type businesses** 3. committed by any **insured** whose business is:

       a.   advertising, broadcasting, publishing, or telecasting;

       b.   designing or determining content of websites for others; or

       c.   an internet search, access, content, or service provider.

However, this exclusion will not apply to **personal and advertising injury** caused by:

       a.   false arrest, detention, or imprisonment;

       b.   malicious prosecution; or

# HISCOX PRO™    General Liability Coverage Part (Occurrence)

|  |  |  |
|---|---|---|
|  | c. | the wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling, or premises that a person occupies, committed by or on behalf of its owner, landlord, or lessor. |
|  |  | For purposes of this exclusion, the placing of frames, borders or links, or advertising, for **you** or others anywhere on the internet is not, by itself, considered the business of advertising, broadcasting, publishing, or telecasting. |
| Knowing violation of rights of another | 4. | caused by **you** or at **your** direction with knowledge the act would violate the rights of another and would inflict **personal and advertising injury**. |
| Material published prior to policy period | 5. | based upon or arising out of oral or written publication of material whose first publication took place prior to the **policy period**. |
| Material published with knowledge of falsity | 6. | based upon or arising out of oral or written publication of material by **you** or at **your** direction with knowledge of its falsity. |
| Unauthorized use of another's name or product | 7. | based upon or arising out of any actual or alleged unauthorized use of another's name or product in **your** email address, domain name, metatag, or any similar tactics to mislead another's potential customers. |
| Wrong description of prices | 8. | based upon or arising out of any actual or alleged wrong description of the price of goods, products, or services stated in **your advertisement**. |

## C. Medical payments exclusions

**We** will have no obligation to pay any sums under Section I. What is covered, C. Medical payments for **medical expenses** for **bodily injury**:

| | | |
|---|---|---|
| Athletic activities | 1. | to any person injured while practicing, instructing, or participating in any physical exercises or games, sports, or athletic contests; however, this exclusion will not apply to a person who is not an **insured** injured while participating in an amateur athletic activity **you** sponsor. |
| Injury on normally occupied premises | 2. | to any person injured on that part of any premises **you** own or rent that the person normally occupies. |
| Injury to you | 3. | to **you** or any person hired to work for or on behalf of **you** or **your** tenant; however, this exclusion will not apply to a **volunteer worker**. |
| Products-completed operations hazard | 4. | included in the **products-completed operations hazard**. |
| Workers' compensation or similar laws | 5. | to any person, whether or not **your employee**, if benefits for such **bodily injury** are payable or must be provided under any workers' compensation, disability benefits, or any similar law. |

## D. Exclusions applicable to the entire general liability coverage part

**We** will have no obligation to pay any sums under this Coverage Part for **medical expenses**, or for any **claim**, including any **damages** or **claim expenses**, for **bodily injury**, **property damage**, or **personal and advertising injury**:

| | | |
|---|---|---|
| Asbestos | 1. | based upon or arising out of the actual or alleged mining, processing, manufacturing, use, testing, ownership, sale, or removal of asbestos, asbestos fibers, or material containing asbestos; exposure to asbestos, asbestos fibers, or materials containing asbestos; or the provision of instructions, recommendations, notices, warnings, supervision, or advice given, or which should have been given, in connections with asbestos, asbestos fibers, or structures or materials containing asbestos. |
| Biological agents | 2. | based upon or arising out of: |
|  | a. | the actual, alleged, or threatened contaminative, pathogenic, toxic, or other hazardous properties of **biological agents**; or |
|  | b. | any: |

---

Includes copyrighted material of Insurance Services Offices, Inc., with its permission

 **HISCOX PRO™** **General Liability Coverage Part (Occurrence)**

| | | |
|---|---|---|
| | (1) | request, demand, or order that **you** or others test for, monitor, clean up, remove, contain, treat, detoxify, or neutralize, or in any way respond to or assess the effect of any **biological agents**; or |
| | (2) | **claim** or other proceeding by or on behalf of a governmental authority or others for the testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, or neutralizing, or in any way responding to or assessing the effects of any **biological agents**. |

| | | |
|---|---|---|
| Communicable disease | 3. | based upon or arising out of the actual or alleged transmission of a communicable disease. This exclusion will apply even if the **claim** against **you** alleges negligence or other wrongdoing in the: |
| | a. | supervising, hiring, employing, training, or monitoring of others that may be infected with and spread a communicable disease; |
| | b. | testing for a communicable disease; |
| | c. | failure to prevent the spread of the disease; or |
| | d. | failure to report the disease to authorities. |

| | | |
|---|---|---|
| Contractual liability | 4. | for which **you** are legally obligated to pay as **damages** because of liability assumed in a contract or agreement. However, this exclusion will not apply to liability for **damages**: |
| | a. | **you** would have in the absence of such contract or agreement; or |
| | b. | assumed in an **insured contract**, provided the **bodily injury**, **property damage**, or **personal and advertising injury** occurs after such contract or agreement has been fully executed. |

| | | |
|---|---|---|
| Crime or fraud | 5. | based upon or arising out of any actual or alleged criminal or fraudulent conduct committed by **you**, at **your** direction, or with **your** consent or knowledge. |

| | | |
|---|---|---|
| Electronic chatrooms, bulletin boards, or websites | 6. | based upon or arising out of an electronic chatroom, bulletin board, or website **you** host, own, or over which **you** exercise control. |

| | | |
|---|---|---|
| Electronic data | 7. | based upon or arising out of the loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate electronic data. |

| | | |
|---|---|---|
| Employment related liability | 8. | based upon or arising out of any actual or alleged: |
| | a. | obligation under any workers' compensation, unemployment compensation, employers' liability, fair labor standards, labor relations, wage and hour, or disability benefit law, including any similar provisions of any federal, state, or local statutory or common law; |
| | b. | liability or breach of any duty or obligation owed by **you** as an employer or prospective employer; or |
| | c. | harassment, wrongful termination, retaliation, or discrimination, including but not limited to adverse or disparate impact, |
| | | including any resulting **damages** sustained at any time by the brother, child, parent, sister, or spouse of such person as a consequence of the above. |
| | | This exclusion will apply: |
| | a. | whether **you** may be liable as an employer or in any other capacity; and |
| | b. | to any obligation to share **damages** with or repay someone else who must pay **damages** because of any of the above. |

| | | |
|---|---|---|
| Fair credit | 9. | based upon or arising out of any actual or alleged violation of the Fair Credit Reporting Act and/or Fair and Accurate Credit Transactions Act, both as may be amended, or any similar federal, state, or local statutes, rules, or regulations in or outside the U.S. |

 **HISCOX PRO™** **General Liability Coverage Part (Occurrence)**

| | | |
|---|---|---|
| Intellectual property | 10. | based upon or arising out of any actual or alleged infringement, use, or disclosure of any intellectual property, including but not limited to copyright, trademark, trade dress, patent, service mark, service name, title, or slogan, or any publicity rights violations, cyber squatting violations, moral rights violations, any act of passing-off, or any misappropriation of trade secret. |

However, this exclusion will not apply to:

    a.    the use of another's advertising idea in **your advertisement**; or

    b.    infringement of copyright, trade dress, or slogan in **your advertisement**.

| | | |
|---|---|---|
| Lead | 11. | based upon or arising out of: |

    a.    the actual, alleged, or threatened contaminative, pathogenic, toxic, or other hazardous properties of **lead**;

    b.    any:

        (1)    request, demand, or order that **you** or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to or assess the effect of **lead**; or

        (2)    **claim** or other proceeding by or on behalf of a governmental authority or others for the testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, or neutralizing, or in any way responding to or assessing the effects of **lead**.

| | | |
|---|---|---|
| Pollution | 12. | based upon or arising out of: |

    a.    the actual, alleged, or threatened discharge, dispersal, seepage, migration, release, or escape of **pollutants**:

        (1)    at or from any premises, site, or location which is or was at any time owned or occupied by or rented or loaned to **you**; however, this subsection will not apply to:

            (a)    **bodily injury** if sustained within a building and caused by smoke, fumes, vapor, or soot originating from equipment that is used to heat, cool, or dehumidify the building, or equipment that is used to heat water for personal use by the building's occupants;

            (b)    **bodily injury** or **property damage** for which **you** may be held liable, if **you** are a contractor and the owner or lessee of such premises, site, or location has been added to **your** policy as an additional insured with respect to **your** ongoing operations performed for that additional insured at the premises, site, or location, and such premises, site, or location is not and never was owned or occupied by or rented or loaned to any **insured** other than that additional insured; or

            (c)    **bodily injury** or **property damage** arising out of heat, smoke, or fumes from a **hostile fire**;

        (2)    at or from any premises, site, or location which is or was at any time used by **you** or any other person or organization for the handling, storage, disposal, processing, or treatment of waste;

        (3)    which are or were at any time transported, handled, stored, disposed of, processed, or treated as waste by or for **you** or for any person or organization for whom **you** are legally liable;

        (4)    at or from any premises, site, or location on which **you** or any contractor or subcontractor working directly or indirectly on **your** behalf is performing operations, if the **pollutants** are brought onto the premises, site, or location in connection with such operations by **you** or **your** contractor or subcontractor. However, this subsection will not apply to:

            (a)    **bodily injury** or **property damage** arising out of the escape of fuels, lubricants, or other operating fluids necessary to perform the normal

 **HISCOX PRO™** **General Liability Coverage Part (Occurrence)**

electrical, hydraulic, or mechanical functions necessary for the operation of **mobile equipment** or its parts, if such fuels, lubricants, or other operating fluids escape from a vehicle part designed to hold, store, or receive them. This exception will not apply if the **bodily injury** or **property damage** arises out of the intentional discharge, dispersal, or release of the fuels, lubricants, or other operating fluids or if such fuels, lubricants, or operating fluids are brought onto the premises, site, or location with the intent that they be discharged, dispersed, or released as part of the operations being performed by **you** or **your** contractor or subcontractor;

(b)    **bodily injury** or **property damage** sustained within a building and caused by the release of gases, fumes, or vapors from materials brought into that building in connection with operations being performed by **you** or **your** contractor or subcontractor; or

(c)    **bodily injury** or **property damage** arising out of heat, smoke, or fumes from a **hostile fire**; or

(5)    at or from any premises, site, or location on which **you** or any contractors or subcontractors working directly or indirectly **your** behalf are performing operations, if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify, or neutralize, or in any way respond to or assess the effects of **pollutants**; or

b.    any:

(1)    request, demand, or order that **you** or others test for, monitor, clean up, remove, contain, treat, detoxify, or neutralize, or in any way respond to or assess the effect of **pollutants**; or

(2)    **claim** or other proceeding by or on behalf of a governmental authority or others for the testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, or neutralizing, or in any way responding to or assessing the effects of **pollutants**.

However, this subsection will not apply to liability for **damages** because of **property damage you** would have in the absence of such request, demand, order, **claim**, or other proceeding by or on behalf of a governmental authority.

| | | |
|---|---|---|
| Privacy | 13. | based upon or arising out of any actual or alleged: |

a.    unauthorized acquisition, access, use, or disclosure of, improper collection or retention of, or failure to protect any non-public personally identifiable information or confidential corporate information that is in **your** care, custody, or control; or

b.    violation of any privacy law or consumer data protection law protecting against the use, collection, or disclosure of any information about a person or any confidential corporate information.

| | | |
|---|---|---|
| Professional services | 14. | based upon or arising out of **your** actual or alleged performance of or failure to perform **professional services**. |
| Recall of products, work, or impaired property | 15. | based upon or arising out of the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal, or disposal of: |

a.    **your product**;

b.    **your work**; or

c.    **impaired property**;

if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy, or dangerous condition in it.

| | | |
|---|---|---|
| Silica | 16. | based upon or arising out of any actual, alleged, or threatened exposure to, inhalation of, or contact with silicon dioxide, silica products, silica fibers, silica dust, any silica byproducts, or silica, whether alone or in combination with any substance, product, or material. |



**HISCOX PRO™** **General Liability Coverage Part (Occurrence)**

| Unsolicited telemarketing | 17. | based upon or arising out of any actual or alleged violation of any federal, state, or local statutes, ordinances, or regulations relating to unsolicited telemarketing, solicitations, emails, faxes, text messages, or any other communications of any type or nature, including but not limited to the Telephone Consumer Protection Act, CAN-SPAM Act, or any "anti-spam" or "do-not-call" statutes, ordinances, or regulations. |

Exclusions 8, 12, and 15 of this Section D do not apply to damage by fire to premises while rented to **you** or temporarily occupied by **you** with the owner's permission. However, any payments **we** make for **property damage** to such premises will be subject to the Damage to Premises Limit.

---

## VII. Definitions

The following definitions apply to this Coverage Part. Additional definitions are contained in the General Terms and Conditions, Section VI. Definitions applicable to all Coverage Parts.

**Accident**

means a sudden and unintended event that causes **bodily injury** to a third party. This definition applies only to coverage provided under Section I. What is covered, C. Medical payments.

**Advertisement**

means a notice about **your** goods, products, or services that is published or broadcast to the general public or a specific market segment for the purpose of attracting customers or supporters. For purposes of this definition:

1. notices that are published include material placed on the internet or on other similar electronic means of communication; and

2. with regard to websites, only that part of the website that is about **your** goods, products, or services for the purposes of attracting customers or supporters is considered an advertisement.

**Auto**

means:

1. a land motor vehicle, trailer, or semi-trailer designed for travel on public roads, including any attached machinery or equipment, or

2. any other land vehicle subject to a financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged.

However, **auto** does not include **mobile equipment**.

**Biological agents**

means any:

1. a. bacteria;

   b. mildew, mold, or fungi;

   c. other microorganisms; or

   d. mycotoxins, spores, or other byproducts of any of the foregoing;

2. viruses or other pathogens (whether or not a microorganism); or

3. colony or group of any of the foregoing.

**Bodily injury**

means physical injury, sickness, or disease sustained by a person, including resulting death, humiliation, mental injury, mental anguish, emotional distress, suffering, or shock, at any time. All such resulting injury will be deemed to occur at the time of the physical injury, sickness, or disease that caused it.

**Claim**

means any:

1. written assertion of liability;

2. written demand for **damages**; or

3. civil proceeding seeking **damages**,

for **bodily injury**, **property damage**, or **personal and advertising injury** to which this Coverage Part applies. This includes an arbitration proceeding or any other alternative dispute resolution proceeding in which such **damages** are sought and to which **you** submit with **our** consent.

---



**General Liability Coverage Part (Occurrence)**

| | |
|---|---|
| **Claim expenses** | means all reasonable and necessary fees, costs, and expenses (including the fees of attorneys and experts) incurred in the investigation, defense, or appeal of a **claim**. |
| **Coverage territory** | means anywhere in the world, but this Coverage Part will apply only to a **claim** brought in the United States, its territories or possessions, or Canada. |
| **Damages** | means any monetary amount **you** are ordered to pay by a court, or by an arbitrator in an arbitration to which **we** have consented. |
| | However, **damages** does not include any civil, regulatory, or criminal fines, restitution, disgorgement, sanctions, taxes, or penalties, including those imposed by any federal, state, or local governmental authority, or any multiple, punitive, or exemplary damages. |
| | **Damages** because of **bodily injury** includes care, loss, or services, or death resulting at any time from the **bodily injury**. |
| **Employee** | means any person employed by **you**, including any **leased worker**, but does not include a **temporary worker**. |
| **Hostile fire** | means a fire that becomes uncontrollable or breaks out from where it was intended to be. |
| **Impaired property** | means tangible property, other than **your product** or **your work**, that cannot be used or is less useful because: |

1. it incorporates **your product** or **your work** that is known or thought to be defective, deficient, inadequate, or dangerous; or
2. **you** have failed to fulfill the terms or conditions of a contract or agreement;

if such property can be restored to use by:

1. the repair, replacement, adjustment, or removal of **your product** or **your work**; or
2. **your** fulfilling the terms or conditions of the contract or agreement.

| | |
|---|---|
| **Insured contract** | means: |

1. a contract for the lease of premises, but not any portion of the lease that indemnifies any person or organization for damage by fire to premises while rented to **you** or temporarily occupied by **you** with permission of the owner;
2. a sidetrack agreement;
3. an easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;
4. an obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;
5. an elevator maintenance agreement; or
6. any other contract or agreement pertaining to **your** business (including an indemnification of a municipality in connection with work performed for such municipality) in which **you** assume the tort liability of another to pay **damages** sustained by a third party to which this Coverage Part would apply. Tort liability means liability that would be imposed by law in the absence of any contract or agreement.

However, an insured contract does not include that part of any contract or agreement:

1. that indemnifies a railroad for **bodily injury** or **property damage** arising out of construction or demolition operations on or within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, roadbeds, tunnel, underpass, or crossing;
2. that indemnifies an architect, engineer, or surveyor for **damages** arising out of:

   a. preparing, approving, or failing to prepare or approve maps, drawings, opinions, reports, surveys, field orders, change orders, designs, or specifications; or

   b. giving or failure to give directions or instructions, if that is the primary cause of the injury or damage; or



# HISCOX PRO™   General Liability Coverage Part (Occurrence)

3.  under which an **insured** who is an architect, engineer, or surveyor assumes the liability for injury or damage arising out of the **insured's** rendering of or failure to render professional services of any kind.

**Lead**

means the element lead in any form, including its use or presence in any alloy, compound, byproduct, or other material waste. Waste includes, but is not limited to, materials to be recycled, reconditioned, or reclaimed.

**Leased worker**

means any person leased to **you** by a labor leasing firm to perform duties related to the conduct of **your** business. However, **leased worker** does not include a **temporary worker**.

**Loading or unloading**

means the handling of property:

1.  after it is moved from the place where it is accepted for movement into or onto an aircraft, **auto**, or watercraft;

2.  while it is in or on an aircraft, **auto**, or watercraft; or

3.  while it is being moved from an aircraft, **auto**, or watercraft to the place where it is finally delivered.

**Loading or unloading** does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, **auto**, or watercraft.

**Medical expenses**

means reasonable expenses for necessary:

1.  first aid administered at the time of an accident;

2.  medical, surgical, x-ray, and dental services, including prosthetic devices; and

3.  ambulance, hospital, professional nursing, and funeral services.

**Mobile equipment**

means any of the following types of land vehicles, including any attached machinery or equipment:

1.  bulldozers, farm machinery, forklifts, and other vehicles designed for use principally off public roads;

2.  vehicles maintained for use solely on or next to premises owned by or rented to **you**;

3.  vehicles that travel on crawler treads;

4.  vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

    a.  power cranes, shovels, loaders, diggers, or drills; or

    b.  road construction or resurfacing equipment such as graders, scrapers, or rollers;

5.  vehicles not described in 1, 2, 3, or 4 above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

    a.  air compressors, pumps, and generators, including spraying, welding, building cleaning, geophysical exploration, lighting, and well-servicing equipment; or

    b.  cherry pickers and similar devices used to raise or lower workers;

6.  vehicles not described in 1, 2, 3, or 4 above maintained primarily for purposes other than the transportation of persons or cargo. However, **mobile equipment** does not include self-propelled vehicles with the following types of permanently attached equipment:

    a.  equipment designed primarily for:

        (1)  snow removal;

        (2)  road maintenance, but not construction or resurfacing; or

        (3)  street clearing or cleaning;

    b.  cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; or

**HISCOX PRO™**  **General Liability Coverage Part (Occurrence)**

|  |  |
|---|---|
|  | c. air compressors, pumps, and generators, including spraying, welding, building cleaning, geophysical exploration, lighting, and well-servicing equipment. |
|  | Instead, vehicles described in a, b, or c above will be considered **autos**. |
| **Occurrence** | means an accident arising out of **your** business operations, including continuous or repeated exposure to substantially the same general harmful conditions. |
| **Officer** | means a person holding any of the officer positions created by an organization's charter, constitution, by-laws, or any other similar governing documents. |
| **Personal and advertising injury** | means injury, including consequential **bodily injury**, arising out of one or more of the following offenses: |

1. false arrest, detention, or imprisonment;

2. malicious prosecution;

3. the wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling, or premises that a person occupies, committed by or on behalf of its owner, landlord, or lessor;

4. oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products, or services;

5. oral or written publication, in any manner, of material that violates a person's right to privacy;

6. the use of another's advertising idea in **your advertisement**; or

7. infringement of copyright, trademark, trade dress, or slogan in **your advertisement**.

**Pollutants** means any solid, liquid, gaseous, or thermal irritant or contaminant, including smoke, vapor, dust, nanoparticles, fibers, soot, ash, fumes, acids, alkalis, chemicals, and waste. Waste includes, but is not limited to, materials to be recycled, reconditioned, or reclaimed.

**Products-completed operations hazard**

1. includes all **bodily injury** and **property damage** taking place away from premises owned, occupied by, loaned, or rented to **you** and arising out of **your product** or **your work**, except:

   a. products that are still in **your** physical possession; or

   b. work that has not yet been completed or abandoned. However, **your work** will be deemed completed at the earliest of the following times:

      (1) when all of the work called for in **your** contract or agreement has been completed;

      (2) when all of the work to be performed at the site has been completed, if **your** contract or agreement calls for work at more than one site; or

      (3) when that part of the work completed at a site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

      Work that may need service, maintenance, correction, repair, or replacement, but which is otherwise complete, will be treated as completed; and

2. does not include **bodily injury** or **property damage** arising out of:

   a. the transportation of property, unless the injury or damage results from a condition in or on a vehicle not owned or operated by or loaned or rented to **you** and that condition was created by the **loading or unloading** of that vehicle by **you**; or

   b. the existence of tools, uninstalled equipment, or abandoned or unused materials.

**Professional services** means professional services customarily provided by an architect, engineer, surveyor, physician, surgeon, dentist, or other healthcare provider, accountant, insurance agent/broker, investment advisor, securities broker/dealer, or attorney, or any other services identified as Covered Professional Services in the Declarations.

 **General Liability Coverage Part (Occurrence)**

| | |
|---|---|
| **Property damage** | means: |

1.  physical injury to tangible property, including all resulting loss of use of that property. All such loss of use will be deemed to occur at the time of the physical injury that caused it; or

2.  loss of use of tangible property that is not physically injured. All such loss of use will be deemed to occur at the time of the **occurrence** that caused it.

Tangible property does not include any software, data, or other information in electronic form.

**Retention**

means the amount stated as such under the General Liability Coverage Part section of the Declarations.

**Temporary worker**

means a person who is furnished to **you** to substitute for a permanent **employee** on leave or to meet seasonal or short-term workload conditions. **Temporary worker** does not include **leased worker**.

**Volunteer worker**

means a person who is not **your employee**, and who donates his or her work and acts at **your** direction and within the scope of duties determined by **you**, and is not paid a fee, salary, or other compensation by **you** or anyone else for their work performed for **you**.

**You**, **your**, or **insured**

means the **named insured** and any other person or organization expressly described as an **insured** in Section III. Who is an insured.

**Your product**

1.  means any:
    a.  goods or products, other than real property, manufactured, sold, handled, distributed, or disposed of by:
        (1)  **you**;
        (2)  others trading under **your** name; or
        (3)  a person or organization whose assets or business **you** have acquired; and
    b.  containers (other than vehicles), materials, parts, or equipment furnished in connection with such goods or products;

2.  includes:
    a.  representations or warranties made at any time with respect to the durability, fitness, performance, quality, or use of **your product**; and
    b.  the providing of or failure to provide instructions or warnings; and

3.  does not include vending machines or other property loaned or rented to or located for the use of others but not sold.

**Your work**

1.  means:
    a.  work or operations performed by **you** or on **your** behalf; and
    b.  materials, parts, or equipment furnished in connection with such work or operations; and

2.  includes:
    a.  representations or warranties made at any time with respect to the durability, fitness, performance, quality, or use of **your work**; and
    b.  the providing of or failure to provide instructions or warnings.

Includes copyrighted material of Insurance
Services Offices, Inc., with its permission



Administered by Hiscox Inc. d/b/a Hiscox Insurance Agency in CA License No 0F09668
520 Madison Avenue 32nd Floor, New York, NY 10022
(646) 452-2353

**Endorsement 1**

NAMED INSURED: American Protection Group Inc

**E6020.2 War and Civil War Exclusion Endorsement**

In consideration of the premium charged, and on the understanding this endorsement leaves all other terms, conditions, and exclusions unchanged, it is agreed the General Terms and Conditions are amended as follows:

This policy does not apply to and **we** will have no obligation pay any sums under this policy, including any **damages**, **claim expenses**, or other **covered amounts**, for any **claim**, **breach**, **event**, or **occurrence** directly or indirectly occasioned by, happening through, or in consequence of:

1. war, invasion, acts of foreign enemies, hostilities (whether war is declared or not), civil war, rebellion, revolution, insurrection, military, or usurped power; or

2. confiscation, nationalization, requisition, destruction of, or damage to property by or under the order of any government, public, or local authority.

However, this exclusion will not apply to coverage under the General Liability Coverage Part (if purchased) for damage by fire to premises while rented to **you** or temporarily occupied by **you** with the owner's permission. Any payments **we** make for **property damage** to such premises will be subject to the Damage to Premises Limit.

| | | | |
|---|---|---|---|
| Endorsement effective: | 05/08/2019 | Certificate No.: | MPL4147217.19 |
| Endorsement No: | 1 | Processed Date: | 07/03/2019 |
| Hiscox Inc. | | | |

Authorized Representative
Kevin Kerridge

WCL E6020 CW (07/14)

Page 1 of 1

HPSENSLEN33



Administered by Hiscox Inc. d/b/a Hiscox Insurance Agency in CA License No 0F09668
520 Madison Avenue 32nd Floor, New York, NY 10022
(646) 452-2353

<u>**Endorsement 2**</u>

NAMED INSURED: American Protection Group Inc

<u>**E6015.7 Lloyd's Syndicate (3624) Endorsement**</u>

In consideration of the premium charged, and on the understanding this endorsement leaves all other terms, conditions, and exclusions unchanged, it is agreed:

The Underwriters referred to in the Declarations are identified as follows:

Proportion Percent: 100%
Syndicate: 3624
Contract #: B1234HISINC2019
Binder Registration Date: November 19, 2018
Authorization Date: December 22, 2005

| | | | |
|---|---|---|---|
| Endorsement effective: | 05/08/2019 | Certificate No.: | MPL4147217.19 |
| Endorsement No: | 2 | Processed Date: | 07/03/2019 |

Hiscox Inc.

Authorized Representative
Kevin Kerridge



Administered by Hiscox Inc. d/b/a Hiscox Insurance Agency in CA License No 0F09668
520 Madison Avenue 32nd Floor, New York, NY 10022
(646) 452-2353

---

**Endorsement 3**

NAMED INSURED: American Protection Group Inc

**E6017.2 Nuclear Incident Exclusion Clause-Liability-Direct (Broad) Endorsement**

In consideration of the premium charged, and on the understanding this endorsement leaves all other terms, conditions, and exclusions unchanged, it is agreed:

**We** will have no obligation to pay any sums under this policy, including any **damages**, **claim expenses**, or other **covered amounts**, for any **claim**, **breach**, **event**, or **occurrence**:

A.   Under any liability coverage, for injury, sickness, disease, death, or destruction:

    1.   for which **you** are also insured under a nuclear energy liability policy issued by the Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, or Nuclear Insurance Association of Canada, or would be insured under any such policy but for exhaustion of its limit of liability; or

    2.   resulting from the **hazardous properties** of **nuclear material** and with respect to which:

        a.   any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, as amended; or

        b.   **you** are, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

B.   Under any Medical Payments coverage, or under any Supplementary Payments provision relating to immediate medical or surgical relief, for expenses incurred with respect to bodily injury, sickness, disease, or death resulting from the **hazardous properties** of **nuclear material** and arising out of the operation of a **nuclear facility** by any person or organization.

C.   Under any liability coverage, for injury, sickness, disease, death, or destruction resulting from the **hazardous properties** of **nuclear material**, if:

    1.   the **nuclear material** is at any **nuclear facility** owned or operated by **you** or on **your** behalf, or has been discharged or dispersed from such a facility;

    2.   the **nuclear material** is contained in **spent fuel** or **waste** which is or was at any time possessed, handled, used, processed, stored, transported, or disposed of by **you** or on **your** behalf; or

    3.   the injury, sickness, disease, death, or destruction arises out of the furnishing by **you** of services, materials, parts, or equipment in connection with the planning, construction, maintenance, operation, or use of any **nuclear facility**, but if such facility is located within the United States of America, its territories or possessions, or Canada, this exclusion (3) applies only to injury to or destruction of property at such **nuclear facility**.

As used in this endorsement:

**Hazardous properties** includes radioactive, toxic, or explosive properties;

**Nuclear material** means **source material**, **special nuclear material**, or **byproduct material**;

**Nuclear reactor** means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;

**Source material**, **special nuclear material**, and **byproduct material** have the meanings given them in the Atomic Energy Act of 1954, as amended;

**Spent fuel** means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a **nuclear reactor**;

**Waste** means any waste material:



Administered by Hiscox Inc. d/b/a Hiscox Insurance Agency in CA License No 0F09668
520 Madison Avenue 32nd Floor, New York, NY 10022
(646) 452-2353

---

## Endorsement 3

NAMED INSURED: American Protection Group Inc

1. containing **byproduct material**; and

2. resulting from the operation by any person or organization of any **nuclear facility** included in paragraph 1 or 2 of the definition of **nuclear facility**;

**Nuclear facility** means:

1. any any **nuclear reactor**;

2. any any equipment or device designed or used for:

   a. separating the isotopes of uranium or plutonium;

   b. processing or utilizing **spent fuel**; or

   c. handling, processing, or packaging **waste**;

3. any equipment or device used for the processing, fabricating, or alloying of **special nuclear material**, if at any time the total amount of such material in **your** custody at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235; or

4. any structure, basin, excavation, premises, or place prepared or used for the storage or disposal of **waste**.

**Nuclear facility** includes the site on which any of the foregoing is located, all operations conducted on such site, and all premises used for such operations;

With respect to injury to or destruction of property, "injury" or "destruction" includes all forms of radioactive contamination of property.

| | | | |
|---|---|---|---|
| Endorsement effective: | 05/08/2019 | Certificate No.: | MPL4147217.19 |
| Endorsement No: | 3 | Processed Date: | 07/03/2019 |
| Hiscox Inc. | | | |

Authorized Representative
Kevin Kerridge



Administered by Hiscox Inc. d/b/a Hiscox Insurance Agency in CA License No 0F09668
520 Madison Avenue 32nd Floor, New York, NY 10022
(646) 452-2353

---

**Endorsement 4**

NAMED INSURED: American Protection Group Inc

**E6018.2 Applicable Law Endorsement**

In consideration of the premium charged, and on the understanding this endorsement leaves all other terms, conditions, and exclusions unchanged, it is agreed:

This policy is subject to the applicable state law to be determined by the court of competent jurisdiction as determined by the provisions of the Service of Suit Endorsement to this policy.

| | | | |
|---|---|---|---|
| Endorsement effective: | 05/08/2019 | Certificate No.: | MPL4147217.19 |
| Endorsement No: | 4 | Processed Date: | 07/03/2019 |
| Hiscox Inc. | | | |

Authorized Representative
Kevin Kerridge



**HISCOX PRO**™

Administered by Hiscox Inc. d/b/a Hiscox Insurance Agency in CA License No 0F09668
520 Madison Avenue 32nd Floor, New York, NY 10022
(646) 452-2353

<u>**Endorsement 5**</u>

NAMED INSURED: American Protection Group Inc

**E6019.1 Service of Suit Endorsement (California)**

In consideration of the premium charged, and on the understanding this endorsement leaves all other terms, conditions, and exclusions unchanged, it is agreed:

In the event **we** fail to pay any amount claimed to be due under this policy, **we** agree to submit to the jurisdiction of a Court of competent jurisdiction within the United States at **your** request. Nothing in this clause is intended to constitute a waiver of **our** right to commence an action in any Court of competent jurisdiction in the United States, to remove an action to a United States District Court, or to seek a transfer of a case to another Court as permitted by the laws of the United States or of any state in the United States.

Service of process in any suit against **us** may be made on:

Compliance Department
Hiscox Insurance Agency
101 California Street, Suite 4350
San Francisco, CA 94111

In any suit instituted against **us**, **we** agree to abide by the final decision of such Court, or in the event of an appeal, of any Appellate Court.

The above named are authorized to accept service of process on **our** behalf in any such suit and will enter a general appearance on **our** behalf in the event such suit is instituted.

Further, pursuant to any statute of any state, territory, or district of the United States which makes provision therefore, **we** designate the Superintendent, Commissioner, or Director of Insurance, or other officer specified for that purpose in the statute, as **our** agent for service of process in any action, suit, or proceeding instituted by **you** or on **your** behalf, or any other beneficiary under this policy, and designate the above named as the person to whom such agent is authorized to mail process.

| | | | |
|---|---|---|---|
| Endorsement effective: | 05/08/2019 | Certificate No.: | MPL4147217.19 |
| Endorsement No: | 5 | Processed Date: | 07/03/2019 |
| Hiscox Inc. | | | |

Authorized Representative
Kevin Kerridge



Administered by Hiscox Inc. d/b/a Hiscox Insurance Agency in CA License No 0F09668
520 Madison Avenue 32nd Floor, New York, NY 10022
(646) 452-2353

**Endorsement 6**

NAMED INSURED: American Protection Group Inc

**E6049.2 Shared Limits Endorsement**

**[ ] Professional Liability**
**[ ] General Liability**
**[ ] Data Breach and Privacy Security Liability**
**[ ] Media Liability**
**[ ] Cyber Enhancements**

In consideration of the premium charged, and on the understanding this endorsement leaves all other terms, conditions, and exclusions unchanged, it is agreed:

Solely with respect to the Coverage Parts selected above, the following is added to the end of Section II. Limits of liability of the General Terms and Conditions:

SL-A.  Shared limits

The **coverage part limits** applicable to each Coverage Part will be shared, and any payments **we** make under any one Coverage Part, other than coverage enhancements or other items **we** have expressly agreed to pay in addition to the limit, will reduce the **coverage part limits** for all Coverage Parts.

If the **coverage part limit** applicable to each Coverage Part is different, the maximum amount **we** will pay for **covered amounts** under all Coverage Parts combined, other than coverage enhancements or other items **we** have expressly agreed to pay in addition to the limits, will be the highest of the applicable **coverage part limits**.

| | | |
|---|---|---|
| Endorsement effective: | 05/08/2019 | Certificate No.: | MPL4147217.19 |
| Endorsement No: | 6 | Processed Date: | 07/03/2019 |
| Hiscox Inc. | | | |

Authorized Representative
Kevin Kerridge



Administered by Hiscox Inc. d/b/a Hiscox Insurance Agency in CA License No 0F09668
520 Madison Avenue 32nd Floor, New York, NY 10022
(646) 452-2353

---

**Endorsement 7**

NAMED INSURED: American Protection Group Inc

**E6846.1 Named Insured v. Named Insured Exclusion Endorsement (GL)**

In consideration of the premium charged, and on the understanding this endorsement leaves all other terms, conditions, and exclusions unchanged, it is agreed the General Liability Coverage Part is amended as follows:

The following exclusion is added to the end of Section VI. Exclusions – What is not covered, D. Exclusions applicable to the entire general liability coverage part:

Named insured vs. named     II-1.     brought by or on behalf of one **named insured** against another **named insured**.
insured

| | | | |
|---|---|---|---|
| Endorsement effective: | 05/08/2019 | Certificate No.: | MPL4147217.19 |
| Endorsement No: | 7 | Processed Date: | 07/03/2019 |

Hiscox Inc.

Authorized Representative
Kevin Kerridge

 **HISCOX PRO™**

Administered by Hiscox Inc. d/b/a Hiscox Insurance Agency in CA License No 0F09668
520 Madison Avenue 32nd Floor, New York, NY 10022
(646) 452-2353

---

**Endorsement 8**

NAMED INSURED: American Protection Group Inc

**E9998.2 TRIA Not Purchased Endorsement**

**Terrorism Risk Insurance Act, as amended**
**Not Purchased Endorsement**

This Endorsement is issued in accordance with the terms and conditions of the federal Terrorism Risk Insurance Act.

It is hereby noted that the Company has made available coverage for insured losses directly or indirectly resulting from an "act of terrorism" and the Insured has declined or not confirmed to purchase this coverage.

This Insurance therefore affords no coverage for losses directly or indirectly resulting from an "act of terrorism" except to the extent, if any, otherwise provided by this Policy.

The term "act of terrorism" means an act that is certified by the Secretary of the Treasury, in accordance with the provisions of the federal Terrorism Risk Insurance Act, to be an act of terrorism pursuant to such Act. The criteria contained in the Terrorism Risk Insurance Act for an "act of terrorism" include the following:

1   The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act; and

1   The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

All other terms, conditions, insured coverage and exclusions of this Insurance including applicable limits and deductibles remain unchanged and apply in full force and effect to the coverage provided by this Insurance.

All other terms and conditions remain unchanged.

| | | | |
|---|---|---|---|
| Endorsement effective: | 05/08/2019 | Certificate No.: | MPL4147217.19 |
| Endorsement No: | 8 | Processed Date: | 07/03/2019 |
| Hiscox Inc. | | | |

Authorized Representative
Kevin Kerridge

INT E9998 CW (01/15)

Page 1 of 1

HPSENSLEN33



Administered by Hiscox Inc. d/b/a Hiscox Insurance Agency in CA License No 0F09668
520 Madison Avenue 32nd Floor, New York, NY 10022
(646) 452-2353

<u>Endorsement 9</u>

NAMED INSURED: American Protection Group Inc

<u>**E6080.1 Amend General Terms and Conditions for Occurrence Coverage Part Endorsement**</u>

In consideration of the premium charged, and on the understanding this endorsement leaves all other terms, conditions, and exclusions unchanged, it is agreed the General Terms and Conditions are amended as follows:

The following is added to the end of Section II. Limits of liability:

OC-A.    Continuous occurrences    Any injury, damage, **accident**, or **occurrence** which continues, changes, or resumes before, during, or after the **policy period** will be deemed to have occurred when such injury, damage, **accident**, or **occurrence** first started. If, by operation of this provision, the injury, damage, **accident**, or **occurrence** is deemed to have occurred during any period when **we** insured **you**, it will be subject to only one **retention** (if applicable) and one Each Claim or Each Occurrence Limit regardless of the number of claimants, **insureds**, or **claims** involved.

| | | |
|---|---|---|
| Endorsement effective: | 05/08/2019 | Certificate No.: | MPL4147217.19 |
| Endorsement No: | 9 | Processed Date: | 07/03/2019 |
| Hiscox Inc. | | | |

Authorized Representative
Kevin Kerridge



**HISCOX PRO™**

Administered by Hiscox Inc. d/b/a Hiscox Insurance Agency in CA License No 0F09668
520 Madison Avenue 32nd Floor, New York, NY 10022
(646) 452-2353

---

**Endorsement 10**

NAMED INSURED: American Protection Group Inc

**E6144.5 Defense Outside Limits Endorsement (Separate Limit)**

**[ x ] Professional Liability**
**[] Data Breach and Privacy Security Liability**
**[] Media Liability**

In consideration of the premium charged, and on the understanding this endorsement leaves all other terms, conditions, and exclusions unchanged, it is agreed that the Coverage Part(s) selected above is modified as follows:

**We** will pay up to $1,000,000 in **claim expenses** in addition to, and not as a part of, the **coverage part limit**. However, regardless of the number of **claims** notified to **us** during the **policy period**, any additional **claim expenses we** pay in excess of $1,000,000 will erode the Each Claim Limit applicable to that Coverage Part, and will be a part of, and not in addition to, the **coverage part limit**. This Endorsement will not apply to any **claim** or other covered matter which is subject to a sublimit of the **coverage part limit**, regardless of whether such coverage is afforded under the policy or in any endorsement.

| | | | |
|---|---|---|---|
| Endorsement effective: | 05/08/2019 | Certificate No.: | MPL4147217.19 |
| Endorsement No: | 10 | Processed Date: | 07/03/2019 |

Hiscox Inc.

Authorized Representative
Kevin Kerridge



Administered by Hiscox Inc. d/b/a Hiscox Insurance Agency in CA License No 0F09668
520 Madison Avenue 32nd Floor, New York, NY 10022
(646) 452-2353

**Endorsement 11**

NAMED INSURED: American Protection Group Inc

**E6901.2 Products-Completed Operations Hazard Exclusion Endorsement**

In consideration of the premium charged, and on the understanding this endorsement leaves all other terms, conditions, and exclusions unchanged, it is agreed the General Liability Coverage Part is amended as follows:

The following exclusion is added to the end of Section VI. Exclusions – What is not covered, A. Bodily injury and property damages exclusions:

| Products-completed operations hazard | PC-1. | **bodily injury** or **property damage** included within the **products-completed operations hazard**. |
|---|---|---|

| Endorsement effective: | 05/08/2019 | Certificate No.: | MPL4147217.19 |
|---|---|---|---|
| Endorsement No: | 11 | Processed Date: | 07/03/2019 |

Hiscox Inc.

Authorized Representative
Kevin Kerridge



Administered by Hiscox Inc. d/b/a Hiscox Insurance Agency in CA License No 0F09668
520 Madison Avenue 32nd Floor, New York, NY 10022
(646) 452-2353

---

**Endorsement 12**

NAMED INSURED: American Protection Group Inc

**E6803.1 Sexual Misconduct Exclusion Endorsement**

In consideration of the premium charged, and on the understanding this endorsement leaves all other terms, conditions, and exclusions unchanged, it is agreed the General Liability Coverage Part is amended as follows:

The following exclusion is added to the end of Section VI. Exclusions – What is not covered, D. Exclusions applicable to the entire general liability coverage part:

Sexual misconduct    SM-1.    based upon or arising out of any actual, alleged, or threatened abuse, molestation, harassment, mistreatment, or maltreatment of a sexual nature, including the negligent employment, investigation, supervision, training, or retention of a person who commits such conduct, or the failure to report such conduct to the proper authorities.

| | | | |
|---|---|---|---|
| Endorsement effective: | 05/08/2019 | Certificate No.: | MPL4147217.19 |
| Endorsement No: | 12 | Processed Date: | 07/03/2019 |

Hiscox Inc.

Authorized Representative
Kevin Kerridge



Administered by Hiscox Inc. d/b/a Hiscox Insurance Agency in CA License No 0F09668
520 Madison Avenue 32nd Floor, New York, NY 10022
(646) 452-2353

<u>**Endorsement 13**</u>

NAMED INSURED: American Protection Group Inc

<u>**E6805.1 Privacy Exclusion Endorsement**</u>

In consideration of the premium charged, and on the understanding this endorsement leaves all other terms, conditions, and exclusions unchanged, it is agreed the General Liability Coverage Part is amended as follows:

The following exclusion is added to Section VI. Exclusions -- What is not covered, D. Exclusions applicable to the entire general liability coverage part:

Privacy         PR-1.    based upon or arising out of any actual, alleged:

a.    unauthorized acquisition, access, use, or disclosure of, improper collection of, or failure to protect any non-public personally identifiable information or confidential corporate information that is in **your** care, custody, or control; or

b.    violation of any privacy law or consumer data protection law protecting against the use, collection, or disclosure of any information about a person or any confidential corporate information.

| | | | |
|---|---|---|---|
| Endorsement effective: | 05/08/2019 | Certificate No.: | MPL4147217.19 |
| Endorsement No: | 13 | Processed Date: | 07/03/2019 |
| Hiscox Inc. | | | |

Authorized Representative
Kevin Kerridge



Administered by Hiscox Inc. d/b/a Hiscox Insurance Agency in CA License No 0F09668
520 Madison Avenue 32nd Floor, New York, NY 10022
(646) 452-2353

---

**Endorsement 14**

NAMED INSURED: American Protection Group Inc

**E6860.1 Security Services Enhancement Endorsement (Property in Insured's CCC Sublimit)**

In consideration of the premium charged, and on the understanding this endorsement leaves all other terms, conditions, and exclusions unchanged, it is agreed the General Liability Coverage Part is amended as follows:

I.    Section I. What is covered, A. Bodily injury and property damage is deleted in its entirety and replaced with the following:

    A.    Bodily injury and property damage

        1.    **We** will pay up to the **coverage part limit** for **damages you** become legally obligated to pay because of **bodily injury** or **property damage** to which this Coverage Part applies, provided:

            a.    the **bodily injury** or **property damage** occurs during the **policy period**;

            b.    the **bodily injury** or **property damage** is caused by an **occurrence** that takes place in the **coverage territory**; and

            c.    **you** have paid the applicable **retention** stated in the Declarations.

        2.    **We** will pay up to the Lost Key Limit identified below for **damages you** become legally obligated to pay because of the loss or mysterious disappearance of any keys entrusted to or in the possession, care, custody, or control of the **named insured** or any of the **named insured's employees**; provided:

            a.    such loss or mysterious disappearance is not caused either directly or indirectly by any misappropriation, secretion, conversion, infidelity, or other act of dishonesty on **your** part;

            b.    **we** will only be obligated to pay that portion of any **damages** which represents the actual cost of:

                (1)    adjustment of locks to accept any new key; or

                (2)    installation and replacement of new locks, if necessary; and

            c.    **you** have paid the Lost Key Retention identified below.

        3.    **We** will pay up to the Security Services Limit identified below for **damages you** become legally obligated to pay because of **bodily injury** or **property damage** directly resulting from **your** performance of **security services**, provided:

            a.    the **bodily injury** or **property damage** occurs during the **policy period**;

            b.    the **bodily injury** or **property damage** is caused by an **occurrence** that takes place in the **coverage territory**; and

            c.    **you** have paid the Security Services Retention identified below.

        **We** will have the right and duty to defend any **claim** seeking **damages** covered under this subsection A, as set out in Section II. Defense and supplementary payments. **We** may, at **our** discretion, investigate any **occurrence** and settle any **claim** that may result.

II.    Section I. What is covered, C. Medical payments is deleted in its entirety and replaced with the following:

    C.    Medical payments

        1.    Regardless of fault, **we** will pay up to the Medical Payments limit stated in the Declarations for **medical expenses** incurred by each person for **bodily injury** caused by an **accident** to which this Coverage Part applies, provided:



Administered by Hiscox Inc. d/b/a Hiscox Insurance Agency in CA License No 0F09668
520 Madison Avenue 32nd Floor, New York, NY 10022
(646) 452-2353

**Endorsement 14**

NAMED INSURED: American Protection Group Inc

    a.    the **bodily injury** is caused by an **occurrence** that takes place in the **coverage territory** during the **policy period**;

    b.    the **accident** occurs during the **policy period**;

    c.    the expenses are incurred and reported to **us** within one year of the date of the **accident**; and

    d.    the person who sustained such **bodily injury** submits to examination, at **our** expense, by physicians of **our** choice as often as **we** reasonably require.

2.    Regardless of fault, **we** will pay up to the Post-Incident First Aid Limit identified below for expenses **you** incur to administer first aid to each person because of **bodily injury** directly resulting from **your** performance of **security services**; provided:

    a.    the **bodily injury** takes place within the **coverage territory**; and

    b.    the expenses are incurred immediately after the incident that caused the **bodily injury** and reported to **us** within one year of the date of such incident.

III.    In Section IV. Limits of liability, F. Medical payments limit is deleted in its entirety and replaced with the following:

    F.    Medical payments limit   The Medical Payments limit identified in the Declarations is the most **we** will pay for the sum of **medical expenses** for **bodily injury** sustained by any one person covered under Section I. What is covered, C. Medical payments, paragraph 1.

IV.    The following is added to Section IV. Limits of liability:

    SS-A.    Property in your care / custody/control sublimit   A Property in Your Care/Custody/Control Sublimit of $1,000,000 is the most **we** will pay for all **damages** because of **property damage** to personal property in **your** care, custody, or control, arising out of any one **occurrence**.

    This Property in Your Care/Custody/Control Sublimit will apply to **property damage** to:

    1.    any keys entrusted to or in the possession, care, custody, or control of the **named insured**; and

    2.    equipment **you** borrow while at a job site if it is being used by someone to perform operations at the time of such **property damage**.

    **You** must pay the **retention** stated in the Declarations in connection with any payment **we** make under this Subsection SS-A, and any payments **we** make will be a part of, and not in addition to, the **coverage part limit**.

    SS-B.    Security services limits   The Post-Incident First Aid Limit is the most **we** will pay for all expenses **you** incur to administer first aid to any one person covered under Section I. What is covered, C. Medical payments, paragraph 2.
The Lost Key Limit is the most **we** will pay for all **damages** because of **property damage** covered under Section I. What is covered, A. Bodily injury and property damage, paragraph 2 arising out of any one **occurrence**.
The Security Services Limit is the most **we** will pay for all **damages** because of **bodily injury** and **property damage** covered under Section I. What is covered, A. Bodily injury and property damage, paragraph 3 arising out of any one **occurrence**.
No **retention** will apply to amounts **we** pay under Section I. What is covered, C. Medical payments, paragraph 2.



Administered by Hiscox Inc. d/b/a Hiscox Insurance Agency in CA License No 0F09668
520 Madison Avenue 32nd Floor, New York, NY 10022
(646) 452-2353

---

**Endorsement 14**

NAMED INSURED: American Protection Group Inc

All other limits described in this Subsection SS-A will be in excess of the applicable **retention**, and any payments **we** make under this Subsection SS-A will be a part of, and not in addition to, the **coverage part limit**.

V.    In Section VI. Exclusions -- What is not covered, A. Bodily injury and property damage exclusions, exclusions 3 and 6 are deleted in their entirety and replaced with the following:

Damage to property        3.    **property damage** to:

a.    property **you** own, rent, or occupy, including any costs or expenses incurred by **you** or any other person or organization for repair, replacement, enhancement, restoration, or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;

b.    premises **you** sell, give away, or abandon, if the **property damage** arises out of any part of those premises;

c.    property loaned to **you**;

d.    that particular part of real property on which **you** or any contractors or subcontractors working directly or indirectly on **your** behalf are performing operations, if the **property damage** arises out of those operations; or

e.    that particular part of any property that must be restored, repaired, or replaced because **your work** was incorrectly performed on it.

Subsections a, c of this exclusion will not apply to **property damage** (other than damage by fire) to premises (including the contents of the premises) rented to **you** for seven or fewer consecutive days. However, any payments **we** make for **property damage** to such property will be subject to the Damage to Premises Limit.
Subsection b of this exclusion will not apply if the premises are **your work** and were never occupied, rented, or held for rental by **you**.
Subsections c, d, and e of this exclusion will not apply to liability assumed under a sidetrack agreement.
Subsection e of this exclusion will not apply to **property damage** included in the **products-completed operations hazard**.
Subsections c and e of this exclusion will not apply to **property damage** arising out of the use of an elevator at premises **you** own, rent, or occupy. However, any payments **we** make for such **property damage** will be subject to the Elevator Liability Sublimit.
Subsection d of this exclusion will not apply to **property damage** covered under Section I. What is covered, A. Bodily injury and property damage, subsection 2. However, any payments **we** make for such **property damage** will be subject to the Lost Key Limit identified below.

Subsection c of this exclusion will not apply to **property damage** to personal property in **your** care, custody, or control, however, any payments **we** make for such **property damage** will be subject to the Property in Your Care/Custody/Control Sublimit.

Expected or intended        6.    **bodily injury** or **property damage** expected or intended from the standpoint of any **insured**.
Injury                         This exclusion will not apply to **bodily injury** or **property damage**:

a.    resulting from the use of reasonable force in the performance of **security services** to protect persons or property; or

b.    directly resulting from **your** performance of **security services**.



**HISCOX PRO™**

Administered by Hiscox Inc. d/b/a Hiscox Insurance Agency in CA License No 0F09668
520 Madison Avenue 32nd Floor, New York, NY 10022
(646) 452-2353

**Endorsement 14**

NAMED INSURED: American Protection Group Inc

However, any payments **we** make for such **bodily injury** or **property damage** will be subject to the Security Services Limit.

VI.  The following exclusion is added to the end of Section VI. Exclusions – What is not covered, D. Exclusions applicable to the entire general liability coverage part:

Misappropriation/ mishandling of funds   SS-1.   based upon or arising out the actual or alleged theft, misappropriation, commingling, or conversion of any funds, monies, assets, or property, including any client's funds, monies, assets, or property or the inability or failure to pay, collect, or safeguard funds.

VII.  The following definition is added to the end of Section VII. Definitions:

**Security services**   means the services customarily performed by a security guard, watchperson, bank guard, patroller, traffic controller, or other individual employed in the private security industry, which, for purposes of this policy, means services performed in connection with guarding and protecting people, property, or other assets, or the delivery or transportation of monies, funds, or other property for or on behalf of a client of the **named insured**.

**Security services** also includes the use of reasonable force in connection with the protection of people, property, or other assets, or the delivery or transportation of monies, funds, or other property, including the use of physical force, weapons, mace, firearms, stun guns, Tasers, and/or canine patrols.

Lost Key Limit:            $100,000 Each Occurrence
Lost Key Retention:        $1,000
Security Services Limit:   $Per Occurrence Limit Each Occurrence
Security Services Retention: $Policy Rentention
Post-Incident First Aid Limit: $10,000 Each Person

Endorsement effective:  05/08/2019     Certificate No.:    MPL4147217.19
Endorsement No:         14             Processed Date:     07/03/2019
Hiscox Inc.

Authorized Representative
Kevin Kerridge



Administered by Hiscox Inc. d/b/a Hiscox Insurance Agency in CA License No 0F09668
520 Madison Avenue 32nd Floor, New York, NY 10022
(646) 452-2353

---

**Endorsement 15**

NAMED INSURED: American Protection Group Inc

**E6801.2 Hired and Non-Owned Auto Liability Endorsement**

In consideration of the premium charged, and on the understanding this endorsement leaves all other terms, conditions, and exclusions unchanged, it is agreed the General Liability Coverage Part is amended as follows:

I.     The coverage provided under Section I. What is covered, A. Bodily injury and property damage applies to:

Hired auto liability       **bodily injury** or **property damage** arising out of the maintenance or use of a **hired auto** by **you** or **your employees** in the course of **your** business.

Non-owned
auto liability       **bodily injury** or **property damage** arising out of the use of any **non-owned auto** in **your** business by any person.

II.    With respect to the coverage provided by this Endorsement only, in Section VI. Exclusions – What is not covered, A. Bodily injury and property damage exclusions, the following exclusions are deleted in their entirety:

A.     exclusion 1. Aircraft, autos, or watercraft;

B.     exclusion 2. Damage to impaired property or property not physically injured;

C.     exclusion 3. Damage to property;

D.     exclusion 4. Damage to your product;

E.     exclusion 5. Damage to your work; and

F.     exclusion 9. Mobile equipment,

and replaced with the following:

Aircraft or watercraft HNOA-1.       **bodily injury** or **property damage** arising out of the ownership, maintenance, use, or entrustment to others of any aircraft or watercraft owned or operated by or rented or loaned to **you**. Use includes operation and **loading and unloading**.

This exclusion will apply even if the **claim** against **you** alleges negligence or other wrongdoing in the supervision, hiring, employment, training, or monitoring of others by **you**, if the **occurrence** causing the **bodily injury** or **property damage** involved the ownership, maintenance, use, or entrustment to others of any aircraft or watercraft owned or operated by or rented or loaned to **you**.
However, this exclusion will not apply to:

a.     watercraft while ashore on premises owned by or rented to **you**;

b.     watercraft **you** do not own, provided it is:

(1)   less than 75 feet long; and

(2)   not being used to transport persons or property for a charge;

c.     liability assumed in an **insured contract** for the ownership, maintenance, or use of an aircraft or watercraft by others; or

d.     aircraft **you** do not own. However, this Coverage Part will be excess over any other insurance that applies to such aircraft, whether primary, excess, contingent, or on any other basis, and the rules stated in Section V. Other provisions affecting coverage, D. Other insurance, 2. Excess insurance will apply.

Property damage       HNOA-2.       **property damage** to:



Administered by Hiscox Inc. d/b/a Hiscox Insurance Agency in CA License No 0F09668
520 Madison Avenue 32nd Floor, New York, NY 10022
(646) 452-2353

**Endorsement 15**

NAMED INSURED: American Protection Group Inc

      a.     property owned or being transported by, or rented or loaned to **you**; or

      b.     property in **your** care, custody, or control.

III.   With respect to the coverage provided by this Endorsement only, Section III. Who is an insured is deleted in its entirety and replaced with the following:

    A.    The following are **insureds**:

       1.    **you**;

       2.    any other person using a **hired auto** with **your** permission;

       3.    with respect to a **non-owned auto**:

          a.    **your** partners or **officers**; or

          b.    **your employees**,

       but only while such **non-owned auto** is being used in **your** business; and

       4.    any other person or organization, but only for their liability because of acts or omissions of an **insured** under 1, 2, or 3 above.

    B.    The following are not **insureds**:

       1.    any person engaged in the business of his or her employer with respect to:

          a.    **bodily injury** to any co-**employee** injured in the course of employment;

          b.    **bodily injury** to the spouse, child, parent, brother, or sister of that co-**employee** as a consequence of any **bodily injury** described in a above; or

          c.    to any obligation to share **damages** with or repay someone else who must pay **damages** because of a or b above;

       2.    **your** partner or **officer** for any **auto** owned by such partner, **officer**, or a member of his or her household;

       3.    any person while employed in or otherwise engaged in duties in connection with an **auto business**, other than an **auto business you** operate;

       4.    the owner or lessee (of whom **you** are a sublessee) of a **hired auto**, the owner of a **non-owned auto**, or any agent or employee of any such owner or lessee; or

       5.    any person or organization for the conduct of any current or past partnership or joint venture that is not shown as a **named insured** in the Declarations.

IV.   With respect to the coverage provided by this Endorsement only, Section V. Other provisions affecting coverage, D. Other insurance is deleted in its entirety and replaced with the following:

    D.    Other insurance       This insurance is specifically excess of and will not contribute with any primary insurance covering the **hired auto** or **non-owned auto**.

V.   With respect to the coverage provided by this Endorsement only, the following additional definitions apply:

    **Auto business**     means the business or occupation of selling, repairing, servicing, storing, or parking **autos**.

    **Hired auto**     means any **auto you** lease, hire, rent, or borrow. This does not include any **auto you** lease, hire, rent, or borrow from any of **your employees**, partners, **officers**, or members of their households.

    **Insured**     means the **named insured** and any other person or organization expressly described as an **insured** in this Endorsement.



Administered by Hiscox Inc. d/b/a Hiscox Insurance Agency in CA License No 0F09668
520 Madison Avenue 32nd Floor, New York, NY 10022
(646) 452-2353

**Endorsement 15**

NAMED INSURED: American Protection Group Inc

| | |
|---|---|
| **Non-owned auto** | means any **auto you** do not own, lease, hire, rent, or borrow which is used in connection with **your** business. This includes **autos** owned by **your employees**, partners, **officers**, or members of their households, but only while used in **your** business or **your** personal affairs. |

VI.    With respect to the coverage provided by this Endorsement only, the definition of "**You, your**, or **insured**" is deleted in its entirety and replaced by the following:

| | |
|---|---|
| **You** or **your** | means the **named insured**. |

VII.    With respect to the coverage provided by this Endorsement only, Section IV. Limits of liability is amended to include the following:

HNOA-A.    The HNOA Limit stated below is the most **we** will pay for all **damages** because of **bodily injury** and **property damage** covered by this Endorsement and arising out of any one **occurrence**.
**You** must pay the HNOA Retention stated below in connection with any payment **we** make under this Endorsement, and any payments **we** make will be a part of, and not in addition to, the **coverage part limit**.

HNOA-B.    The HNOA Retention stated below applies to each **claim** for **damages** sustained by any one person because of:

    1.    **bodily injury**;

    2.    **property damage**; or

    3.    **bodily injury** and **property damage** combined,

as the result of any one **occurrence**.
If **damages** are claimed for care, loss of services, or death resulting at any time from **bodily injury**, a separate HNOA Retention will apply to each person making a claim for such **damages**.

| | |
|---|---|
| HNOA Limit: | $1,000,000 |
| HNOA Retention: | $1,000 |

| | | | |
|---|---|---|---|
| Endorsement effective: | 05/08/2019 | Certificate No.: | MPL4147217.19 |
| Endorsement No: | 15 | Processed Date: | 07/03/2019 |

Hiscox Inc.

Authorized Representative
Kevin Kerridge



Administered by Hiscox Inc. d/b/a Hiscox Insurance Agency in CA License No 0F09668
520 Madison Avenue 32nd Floor, New York, NY 10022
(646) 452-2353

---

### Endorsement 16

NAMED INSURED: American Protection Group Inc

### E6932.1 Contractual Liability Endorsement (Railroads)

In consideration of the premium charged, and on the understanding this endorsement leaves all other terms, conditions, and exclusions unchanged, it is agreed the General Liability Coverage Part is amended as follows:

### SCHEDULE

**Scheduled Railroad:**

All entities or persons required by written contract to be included for coverage, so long as such contract was executed before the **bodily injury** or **property damage** occurred or the offense out of which the **personal and advertising injury** arises was committed.

Solely with respect to the coverage provided to the entities identified in the Schedule above, in Section VII. Definitions, the definition of "**Insured contract**" is deleted in its entirety and replaced with the following:

**Insured contract**       means:

1.  a contract for the lease of premises, but not any portion of the lease that indemnifies any person or organization for damage by fire to premises while rented to **you** or temporarily occupied by **you** with permission of the owner;

2.  a sidetrack agreement;

3.  an easement or license agreement;

4.  an obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

5.  an elevator maintenance agreement; or

6.  any other contract or agreement pertaining to **your** business (including an indemnification of a municipality in connection with work performed for such municipality) in which **you** assume the tort liability of another to pay **damages** sustained by a third party to which this Coverage Part would apply. Tort liability means liability that would be imposed by law in the absence of any contract or agreement.

However, **insured contract** does not include that part of any contract or agreement:

1.  that indemnifies an architect, engineer, or surveyor for **damages** arising out of:

    a.  preparing, approving, or failing to prepare or approve maps, drawings, opinions, reports, surveys, field orders, change orders, designs, or specifications; or

    b.  giving or failure to give directions or instructions, if that is the primary cause of the injury or damage; or

2.  under which an **insured** who is an architect, engineer, or surveyor assumes the liability for injury or damage arising out of the **insured's** rendering of or failure to render professional services of any kind.

Endorsement effective:         05/08/2019                 Certificate No.:              MPL4147217.19

WCLGL E6932 CW (06/18)                                                         Page 1 of 2

HPSENSLEN33



Administered by Hiscox Inc. d/b/a Hiscox Insurance Agency in CA License No 0F09668
520 Madison Avenue 32nd Floor, New York, NY 10022
(646) 452-2353

---

**Endorsement 16**

NAMED INSURED: American Protection Group Inc

Endorsement No:            16                    Processed Date:            07/03/2019
Hiscox Inc.

Authorized Representative
Kevin Kerridge

## NOTICE:

**1.    THE INSURANCE POLICY THAT YOU HAVE PURCHASED IS BEING ISSUED BY AN INSURER THAT IS NOT LICENSED BY THE STATE OF CALIFORNIA. THESE COMPANIES ARE CALLED "NONADMITTED" OR "SURPLUS LINE" INSURERS.**

**2.    THE INSURER IS NOT SUBJECT TO THE FINANCIAL SOLVENCY REGULATION AND ENFORCEMENT THAT APPLY TO CALIFORNIA LICENSED INSURERS.**

**3.    THE INSURER DOES NOT PARTICIPATE IN ANY OF THE INSURANCE GUARANTEE FUNDS CREATED BY CALIFORNIA LAW. THEREFORE, THESE FUNDS WILL NOT PAY YOUR CLAIMS OR PROTECT YOUR ASSETS IF THE INSURER BECOMES INSOLVENT AND IS UNABLE TO MAKE PAYMENTS AS PROMISED.**

**4.    THE INSURER SHOULD BE LICENSED EITHER AS A FOREIGN INSURER IN ANOTHER STATE IN THE UNITED STATES OR AS A NON-UNITED STATES (ALIEN) INSURER. YOU SHOULD ASK QUESTIONS OF YOUR INSURANCE AGENT, BROKER, OR "SURPLUS LINE" BROKER OR CONTACT THE CALIFORNIA DEPARTMENT OF INSURANCE AT THE FOLLOWING TOLL-FREE TELEPHONE NUMBER: 1-800-927-4357 OR INTERNET WEB SITE WWW.INSURANCE.CA.GOV. ASK WHETHER OR NOT THE INSURER IS LICENSED AS A FOREIGN OR NON-UNITED STATES (ALIEN) INSURER AND FOR ADDITIONAL INFORMATION ABOUT THE INSURER. YOU MAY ALSO CONTACT THE NAIC'S INTERNET WEB SITE AT WWW.NAIC.ORG.**

**5.    FOREIGN INSURERS SHOULD BE LICENSED BY A STATE IN THE UNITED STATES AND YOU MAY CONTACT THAT STATE'S DEPARTMENT OF INSURANCE TO OBTAIN MORE INFORMATION ABOUT THAT INSURER.**

**6.    FOR NON-UNITED STATES (ALIEN) INSURERS, THE INSURER SHOULD BE LICENSED BY A COUNTRY OUTSIDE OF THE UNITED STATES AND SHOULD BE ON THE NAIC'S INTERNATIONAL INSURERS DEPARTMENT (IID) LISTING OF**

APPROVED NONADMITTED NON-UNITED STATES INSURERS. ASK YOUR AGENT, BROKER, OR "SURPLUS LINE" BROKER TO OBTAIN MORE INFORMATION ABOUT THAT INSURER.

7.    CALIFORNIA MAINTAINS A LIST OF APPROVED SURPLUS LINE INSURERS. ASK YOUR AGENT OR BROKER IF THE INSURER IS ON THAT LIST, OR VIEW THAT LIST AT THE INTERNET WEB SITE OF THE CALIFORNIA DEPARTMENT OF INSURANCE: WWW.INSURANCE.CA.GOV.

8.    IF YOU, AS THE APPLICANT, REQUIRED THAT THE INSURANCE POLICY YOU HAVE PURCHASED BE BOUND IMMEDIATELY, EITHER BECAUSE EXISTING COVERAGE WAS GOING TO LAPSE WITHIN TWO BUSINESS DAYS OR BECAUSE YOU WERE REQUIRED TO HAVE COVERAGE WITHIN TWO BUSINESS DAYS, AND YOU DID NOT RECEIVE THIS DISCLOSURE FORM AND A REQUEST FOR YOUR SIGNATURE UNTIL AFTER COVERAGE BECAME EFFECTIVE, YOU HAVE THE RIGHT TO CANCEL THIS POLICY WITHIN FIVE DAYS OF RECEIVING THIS DISCLOSURE. IF YOU CANCEL COVERAGE, THE PREMIUM WILL BE PRORATED AND ANY BROKER'S FEE CHARGED FOR THIS INSURANCE WILL BE RETURNED TO YOU.

**D-2 (Effective January 1, 2017)**



# ECONOMIC AND TRADE SANCTIONS POLICYHOLDER NOTICE

Hiscox is committed to complying with the U.S. Department of Treasury Office of Foreign Assets Control (OFAC) requirements. OFAC administers and enforces economic sanctions policy based on Presidential declarations of national emergency. OFAC has identified and listed numerous foreign agents, front organizations, terrorists, and narcotics traffickers as Specially Designated Nationals (SDN's) and Blocked Persons. OFAC has also identified Sanctioned Countries. A list of Specially Designated Nationals, Blocked Persons and Sanctioned Countries may be found on the United States Treasury's web site http://www.treas.gov/offices/enforcement/ofac/.

Economic sanctions prohibit all United States citizens (including corporations and other entities) and permanent resident aliens from engaging in transactions with Specially Designated Nationals, Blocked Persons and Sanctioned Countries. Hiscox may not accept premium from or issue a policy to insure property of or make a claim payment to a Specially Designated National or Blocked Person. Hiscox may not engage in business transactions with a Sanctioned Country.

A Specially Designated National or Blocked Person is any person who is determined as such by the Secretary of Treasury.

A Sanctioned Country is any country that is the subject of trade or economic embargoes imposed by the laws or regulations of the United States.

In accordance with laws and regulations of the United States concerning economic and trade embargoes, this policy may be rendered void from its inception with respect to any term or condition of this policy that violates any laws or regulations of the United States concerning economic and trade embargoes including, but not limited to the following:

(1) Any insured under this Policy, or any person or entity claiming the benefits of such insured, who is or becomes a Specially Designated National or Blocked Person or who is otherwise subject to US economic trade sanctions;

(2) Any claim or suit that is brought in a Sanctioned Country or by a Sanctioned Country government, where any action in connection with such claim or suit is prohibited by US economic or trade sanctions;

(3) Any claim or suit that is brought by any Specially Designated National or Blocked Person or any person or entity who is otherwise subject to US economic or trade sanctions;

(4) Property that is located in a Sanctioned Country or that is owned by, rented to or in the care, custody or control of a Sanctioned Country government, where any activities related to such property are prohibited by US economic or trade sanctions; or

(5) Property that is owned by, rented to or in the care, custody or control of a Specially Designated National or Blocked Person, or any person or entity who is otherwise subject to US economic or trade sanctions.

Please read your Policy carefully and discuss with your broker/agent or insurance professional. You may also visit the US Treasury's website at http://www.treas.gov/offices/enforcement/ofac/.



## Terrorism Risk Insurance Act Notice

**Section 50.5(d) of the United States Treasury Department's regulations with respect to the Terrorism Risk Insurance Act of 2002 (TRIA) as amended by the Terrorism Risk Insurance Program Reauthorization Act of 2015 states that hybrid policies that include both TRIA and non-TRIA lines of business may be considered nonprogram coverage if the premium attributable to the lines subject to TRIA is less than 25% of the total premium charged for the policy. Since the premium allocated to the TRIA line(s) of business is less than 25% of your total premium, TRIA coverage is not being offered with your policy. If you should have any questions or further concerns on this matter please contact us at US_Helpdesk_RFL@hiscox.com or via telephone at 914-273-7400.**



**ECONOMIC AND TRADE SANCTIONS POLICYHOLDER NOTICE**

Hiscox is committed to complying with trade and economic sanctions. To that end:

I.  No (re)insurer shall be deemed to provide cover and no (re)insurer shall be liable to pay any claim or provide any benefit hereunder to the extent that the provision of such cover, payment of such claim or provision of such benefit would expose that (re)insurer to any sanction, prohibition or restriction under United Nations resolutions or the trade or economic sanctions, laws or regulations of the European Union, Australia, United Kingdom or United States of America.

II.  The U.S. Department of Treasury Office of Foreign Assets Control (OFAC) administers and enforces economic sanctions policy based on Presidential declarations of national emergency.  OFAC has identified and listed numerous foreign agents, front organizations, terrorists, and narcotics traffickers as Specially Designated Nationals (SDN's) and Blocked Persons.  OFAC has also identified Sanctioned Countries.  A list of Specially Designated Nationals, Blocked Persons and Sanctioned Countries may be found on the United States Treasury's web site http://www.treas.gov/offices/enforcement/ofac/.

Economic sanctions prohibit all United States citizens (including corporations and other entities) and permanent resident aliens from engaging in transactions with Specially Designated Nationals, Blocked Persons and Sanctioned Countries.  Hiscox may not accept premium from or issue a policy to insure property of or make a claim payment to a Specially Designated National or Blocked Person.  Hiscox may not engage in business transactions with a Sanctioned Country.

A Specially Designated National or Blocked Person is any person who is determined as such by the Secretary of Treasury.

A Sanctioned Country is any country that is the subject of trade or economic embargoes imposed by the laws or regulations of the United States.

In accordance with laws and regulations of the United States concerning economic and trade embargoes, this policy may be rendered void from its inception with respect to any term or condition of this policy that violates any laws or regulations of the United States concerning economic and trade embargoes including, but not limited to the following:

(1)  Any insured under this Policy, or any person or entity claiming the benefits of such insured, who is or becomes a Specially Designated National or Blocked Person or who is otherwise subject to US economic trade sanctions;

(2)  Any claim or suit that is brought in a Sanctioned Country or by a Sanctioned Country government, where any action in connection with such claim or suit is prohibited by US economic or trade sanctions;

(3)  Any claim or suit that is brought by any Specially Designated National or Blocked Person or any person or entity who is otherwise subject to US economic or trade sanctions;

(4)  Property that is located in a Sanctioned Country or that is owned by, rented to or in the care, custody or control of a Sanctioned Country government, where any activities related to such property are prohibited by US economic or trade sanctions; or

(5)  Property that is owned by, rented to or in the care, custody or control of a Specially Designated National or Blocked Person, or any person or entity who is otherwise subject to US economic or trade sanctions.

 **HISCOX**    **ECONOMIC AND TRADE SANCTIONS POLICYHOLDER NOTICE**

Please read your Policy carefully and discuss with your broker/agent or insurance professional.  You may also visit the US Treasury's website at http://www.treas.gov/offices/enforcement/ofac/.



**Policyholder Notice**
**Complaints or Comments**

Any complaints or comments may be sent:

- By Mail to:

  Legal Department
  Hiscox USA
  520 Madison Avenue, 32nd Floor
  New York, NY 10022; or

- By Email to:

  us_helpdesk_rfl@hiscox.com



**CONFORMITY NOTICE**

(This does not amend, extend, or alter the coverages or any other provisions contained in your policy)

Whenever the symbol "$" is used in this policy, it shall mean United States Dollars (USD).



**Security Services**
**Coverage and Claims Information**

**Tailor-made Solutions**

| | |
|---|---|
| **Professional Liability** | **Coverage Highlights:**<br>✓ Industry specific form tailored for security services, including the use of firearms and guard dogs<br>✓ Available on claims made or occurrence basis<br>✓ Contingent Bodily Injury and Property Damage coverage included up to the full limit<br>✓ Personal and Advertising Injury as well as Third Party Discrimination included up to the full limit<br>✓ Blanket Additional Insured coverage included<br>✓ Blanket Waiver of Subrogation for Additional Insureds included<br>✓ Crisis Management sublimit included<br>✓ 50/50 cooperation clause included<br>✓ Coverage included for subsidiaries, joint ventures, and independent contractors<br>✓ Duty to defend policy<br><br>**Claims Scenarios:**<br>• The owner of an office building hired a security company to provide guard services. There was a rash of burglaries in the building during the contract period. The tenants file a lawsuit for damage to their property and the building owner sues for loss of income, as tenants are not renewing their leases due to poor security.<br>• A security guard was directing traffic out of a parking garage. A driver was exiting the garage and drove his car into traffic based on the guard's signal to proceed. The car was struck by an oncoming vehicle and the driver sued the security firm for bodily injury and property damage. |
| **General Liability** | **Coverage Highlights:**<br>✓ Available on claims made or occurrence basis<br>✓ Coverage for Bodily Injury/Property Damage resulting from general business operations<br>✓ Blanket Additional Insured coverage included<br>✓ Blanket Waiver of Subrogation for Additional Insureds included<br>✓ Assault & Battery Coverage included<br>✓ Lost Key Coverage included<br>✓ No fault Med Pay coverage included, outside of limits<br>✓ Hired/Non-Owned Automobile Liability coverage available<br>✓ Employee Benefits Liability coverage available<br><br>**Claims Scenarios:**<br>• A security guard loses the master keys to an office complex. The complex's property manager sues the security firm for the cost to replace all of the locks and keys.<br>• A retail security guard detains a shopper he suspects of shoplifting in order to wait for police to arrive. The police determine the person did not steal any merchandise. The shopper sues the security firm for personal injury, including false arrest, mental anguish and bodily injury from being restrained. |
| **Privacy / Data Breach** | **Coverage Highlights:**<br>✓ First party data breach coverage, third party privacy liability and third party network security liability covered<br>✓ Regulatory defense, fines/penalties, and compensatory awards, PCI fines/penalties/assessments, computer forensics, notification costs, and credit or ID protection costs standard coverage up to $2M, with additional limits available<br>✓ Expert breach response assistance with 24/7 access to a law firm and team of breach response service providers<br>✓ Sublimit for crisis management and public relations costs<br><br>**Claims Scenarios:**<br>• Sensitive information, including social security numbers, was compromised when a security firm's computer system was hacked. The company was required to notify all of the affected employees and provide credit monitoring services.<br>• At a physician's office, patient medical records were stolen by a disgruntled employee of the security company. The physician sued the security company for costs relating to notifying affected patients and protecting their privacy and identity. |
| **Crime** | **Coverage Highlights:**<br>✓ Employee theft, forgery or alteration, inside and outside the premises loss, computer funds transfer loss, and theft of clients' property are covered exposures<br>✓ Claims expense sublimit available<br><br>**Claims Scenarios:**<br>• A security guard is accused of stealing tools and equipment from a construction site he was hired to guard.<br>• The controller of a security firm forged company checks and deposited them in an account for his own personal benefit. |

# EXHIBIT 2

# EXHIBIT 2



April 1, 2021

**BY EMAIL**

Joseph Melech
3337 Lake Crest Court
Westlake Village, CA 91361

Re:     CDI File No.:          CSB-8288847
        Complainant:          Joseph Melech
        Insurer:              Certain Underwriters at Lloyd's, London
        Insured:              American Protection Group Inc.
        Policy No.:           MPL4147217.19
        Claimant:             Brittany Powers
        Claim Tendered by:    Harbor Island Apartments
        Claim No.:            118001741

Dear Mr. Melech:

This will acknowledge and respond to your request for assistance that the California Department of Insurance forwarded to the attention of Hiscox Insurance Company Inc. ("HICI"). As I explain below, the request pertains to a tendered claim that was considered under the terms of a surplus lines policy that was issued on behalf of HICI's affiliate, Hiscox Syndicate 3624, at Lloyd's, London (the "Underwriter"), to American Protection Group, Inc. ("APG").

Hiscox Inc., doing business in California as Hiscox Insurance Services Agency ("Hiscox"), acts as a general agent and underwriting manager for certain interested Underwriters at Lloyd's, London, including the Underwriter.  Hiscox, on behalf of the Underwriter, issued the Policy, Insurance for Security Guards policy MPL4147217.19, to APG for the twelve-month period beginning May 8, 2019.

On December 16, 2020, APG's producer reported that, one week earlier, a claim had been tendered to APG by counsel for Harbor Island Apartments ("Harbor").  Counsel demanded that APG defend and indemnify Harbor, in connection with a lawsuit that is pending in the Nevada District Court of Clark County, relating to a sexual assault that occurred at Harbor's premises, in September 2019. In this regard, Harbor had engaged APG to provide security services at Harbor's premises when the plaintiff was attacked while walking to her apartment. The plaintiff contends that the defendants, including Harbor and APG, were negligent in the implementation of an adequate security program, securing the premises, and in the hiring, retention, training, and management of personnel.

The Company's claim representative acknowledged receipt of the claim the following day, December 17, and requested APG's contact information from its producer. She also noted, "[o]ver the upcoming weeks, [we] will evaluate coverage for this matter and I'll be in touch with the insured once our coverage analysis is complete. We expect this process to take approximately thirty days upon receipt of all necessary information." A copy of the email, dated December 17, is provided for your review. The Company's representative received the contact information, on January 22, 2021.

Thereafter, on January 26, 2021, the Company's representative notified APG's producer by email that "[we have] had an opportunity to complete a detailed coverage analysis for the above-referenced matter and, unfortunately, based on our review of the information provided, Hiscox is constrained to conclude that there is no coverage." A copy of the declination letter discussed below (the "Declination Letter") was attached to the email. Later that day, the Declination Letter was sent by email to APG's representatives, as well.

The Company's representative explained in her letter that:

Hiscox
1133 Westchester Avenue
Suite S-231
White Plains, NY 10604

T  914 273 7487
F  914 273 4716
E  david.schonbrun@hiscox.com
www.hiscoxusa.com



# HISCOX

Because this matter appears to relate to APG's professional liability as a security service, we have analyzed this matter under the Professional Liability coverage part. Hiscox must reserve all of its rights under the General Liability coverage part.

Regrettably, we have concluded that the Professional Liability coverage part does not provide coverage for this matter for the reasons outlined below.

We respectfully note Section V. Exclusions of the Security Services Professional Liability coverage part at Paragraph 22. Sexual Misconduct. This exclusion precludes coverage for any claim "based upon or arising out of any actual, alleged, or threatened abuse, molestation, harassment, mistreatment, or maltreatment of a sexual nature, including the negligent employment, investigation, supervision, training, or retention of a person who commits such conduct, or the failure to report such conduct to the proper authorities." The basis of this matter is that Plaintiff was sexually assaulted. Thus, we are constrained to conclude that there is no coverage available under the Professional Liability coverage part for this matter pursuant to this exclusion.

Declination Letter at 2 (Emphasis added); and pages 3 and 5 of 7 of the Policy's Security Services Professional Liability Coverage Part (Occurrence).  APG's producer left a voicemail message three days later for the Company's representative, which was followed by a call to discuss the coverage determination that was held on February 1.

Hiscox, on behalf of the Underwriter, acted reasonably and in good faith in its dealings with APG and the handling of the tendered claim. It promptly acknowledged receipt of the tendered claim and later reviewed the pleadings in the Nevada lawsuit, including the allegations of sexual abuse, in light of the terms of the Policy.  As the Policy excludes coverage for claims arising from sexual abuse, Hiscox properly declined coverage for the tendered claim.   Accordingly, Hiscox, on behalf of the Underwriter, will respectfully request that the Department conclude that this matter is without merit and may be closed.

Very truly yours,

Hiscox Insurance Services Agency, on behalf of
Certain Underwriters at Lloyd's, London

David I. Schonbrun
Senior Vice President
Head of Legal and Government Affairs
and Secretary Hiscox Partner
Hiscox USA

**UPLOADED TO THE CDI COMPANY**
**COMPLAINT RESPONSE CENTER PORTAL**

cc:     Craig Witt
        Senior Insurance Compliance Officer
        California Department of Insurance
        Consumer Services and Market Conduct Branch
        Claims Services Branch
        300 South Spring Street
        Los Angeles, CA  90013

2

Hiscox
1133 Westchester Avenue
Suite S-231
White Plains, NY 10604

T 914 273 7487
F 914 273 4716
E david.schonbrun@hiscox.com
www.hiscoxusa.com

# EXHIBIT 3

# EXHIBIT 3

STATE OF CALIFORNIA                                                    Ricardo Lara, *Insurance Commissioner*

**DEPARTMENT OF INSURANCE**
CONSUMER SERVICES AND MARKET CONDUCT BRANCH
CLAIMS SERVICES BUREAU
300 SOUTH SPRING STREET
LOS ANGELES, CA 90013
www.insurance.ca.gov



May 24, 2021

*Sent via Email Only to JMelech@JVRCInsurance.com*

Joseph Melech
3337 Lake Crest Court
Westlake Village, CA 91361

**DEPARTMENT OF INSURANCE FILE NUMBER: CSB-8288847**
Regarding: CERTAIN UNDERWRITERS AT LLOYD'S LONDON
Insured/ Your Client: AMERICAN PROTECTION GROUP, INC.

Dear Mr. Melech:

The California Department of Insurance has completed its investigation into your recent Request for Assistance that involved Hiscox/Certain Underwriters at Lloyd's London's handling of your client's insurance claim. We thank you for your patience while we completed our review.

The issue you presented to us involves a dispute with the insurance company as to whether or not the claim for a defense is covered.

While we have attempted to mediate this claim dispute and have thoroughly investigated the insurance company's claims process, we regret that we are unable to resolve this particular dispute. State law does not provide the Department with the authority to determine coverage or decide how much should be paid on any claim. When two parties disagree on coverage, the facts of how an incident occurred, or the appropriate amount of damages to be paid, the ultimate decision is left to a court of law. Only a court of law has the authority to weigh the evidence and the merits of each party's position and arrive at a formal binding decision.

Although the Department was not able to assist you in getting this dispute resolved, if your client wishes to pursue this matter further, contacting an attorney for legal advice would be the most viable option.

Please be assured that each case we receive is reviewed to ensure compliance with the Insurance Code and the Fair Claims Settlement Practices Regulations. Although we do not share our findings on individual cases, as that would jeopardize any present or future action that may be taken against this company; the cumulative results of our regulatory findings are published annually in our Consumer Complaint Study and are available for your review on the Department's public web site.

Although we cannot assist you further in this matter, we appreciate your contacting us regarding your concerns.  Inquiries such as yours help us to understand the challenges people face and identify trends in the insurance industry.  If you have questions on other insurance-related matters, a good source of information may be found on our internet website at www.insurance.ca.gov or you may call our toll-free Consumer Hotline at 1-800-927-HELP.

Sincerely,

*Craig Witt*

Senior Insurance Compliance Officer
Phone:  213-346-6529
Email:  Craig.Witt@insurance.ca.gov

**Please refer to our file number when responding.**

# **<u>EXHIBIT B</u>**



**null / ALL**
**Transmittal Number: 24503172**
**Date Processed: 02/21/2022**

# Notice of Service of Process

| | |
|---|---|
| Primary Contact: | David Schonbrun<br>Hiscox USA<br>180 Beverly Rd<br>White Plains, NY 10605-3308 |
| Electronic copy provided to: | Grace Regan<br>Legal Department<br>Karen Dunbar |

| | |
|---|---|
| **Entity:** | Hiscox Inc.<br>Entity ID Number  2845497 |
| **Entity Served:** | Hiscox, Inc. dba Hiscox Insurance Agency |
| **Title of Action:** | American Protection Group, Inc. vs. Certain Underwriters At Lloyd's, London as Subscribed to Policy Number MPL4147217.19 |
| **Matter Name/ID:** | American Protection Group, Inc. vs. Certain Underwriters At Lloyd's, London as Subscribed to Policy Number MPL4147217.19 (12023835) |
| **Document(s) Type:** | Summons and Amended Complaint |
| **Nature of Action:** | Contract |
| **Court/Agency:** | Clark County District Court, NV |
| **Case/Reference No:** | A-21-843561-C |
| **Jurisdiction Served:** | California |
| **Date Served on CSC:** | 02/18/2022 |
| **Answer or Appearance Due:** | 20 Days |
| **Originally Served On:** | CSC |
| **How Served:** | Personal Service |
| Sender Information: | John P. Aldrich<br>702-853-5490 |

Information contained on this transmittal form is for record keeping, notification and forwarding the attached document(s). It does not constitute a legal opinion. The recipient is responsible for interpreting the documents and taking appropriate action.

**To avoid potential delay, please do not send your response to CSC**

251 Little Falls Drive, Wilmington, Delaware 19808-1674   (888) 690-2882   |   sop@cscglobal.com

# DISTRICT COURT
## CLARK COUNTY, NEVADA

| | |
|---|---|
| AMERICAN PROTECTION GROUP, INC., a Nevada corporation, | CASE NO.: A-21-843561-C<br>DEPT NO.: 32 |
| Plaintiff, | |
| vs. | **SUMMONS** |
| CERTAIN UNDERWRITERS AT LLOYD'S, LONDON AS SUBSCRIBED TO POLICY NUMBER MPL4147217.19; SYNDICATE NO. 3624; HISCOX, INC. dba HISCOX INSURANCE AGENCY; DOE INDIVIDUALS I through X, inclusive; and ROE CORPORATIONS I through X, inclusive, | *HISCOX, INC. dba HISCOX INSURANCE AGENCY* |
| Defendants. | |

**NOTICE! YOU HAVE BEEN SUED. THE COURT MAY DECIDE AGAINST YOU WITHOUT YOUR BEING HEARD UNLESS YOU RESPOND WITHIN 20 DAYS. READ THE INFORMATION BELOW.**

**TO THE DEFENDANT(S):** A civil Amended Complaint has been filed by the Plaintiff(s) against you for the relief set forth in the Complaint.

    1.    If you intend to defend this lawsuit, within 20 days after the Summons is served on you, exclusive of the day of service, you must do the following:

        a.    File with the Clerk of this Court, whose address is shown below, a formal written response to the Complaint in accordance with the rules of the Court, with the appropriate fee.

        b.    Serve a copy of your response upon the attorney whose name and address is shown below.

    2.    Unless you respond, your default will be entered upon application of the Plaintiff(s) and this Court may enter a judgment against you for the relief demanded in the Complaint, which could result in the taking of money or property or other relief requested in the Complaint.

    3.    If you intend to see the advice of an attorney in this matter, you should do so promptly so that your response may be filed on time.

/ / /

/ / /

4.    The State of Nevada, its political subdivisions, agencies, officers, employees, board members, commission members and legislators, each have 45 days after service of this Summons within which to file an Answer or other responsive pleading to the Complaint.

Submitted By:                                  STEVEN D. GRIERSON, CLERK OF COURT

/s/ John P. Aldrich                       By: _____  2/15/2022
John P. Aldrich, Esq.                          Deputy Clerk                    Date
Nevada Bar No. 6877
7866 West Sahara Avenue                        Regional Justice Center
Las Vegas, Nevada 89117                        200 Lewis Avenue
(702) 853-5490                                 Las Vegas, NV 89101
*Attorney for Plaintiff*

                                               **Demond Palmer**